John DOE I, Jane Doe, and John Doe II, Plaintiffs–Appellants,

v.

Ronald O. OTTE and Bruce M. Botelho, Defendants–Appellees.

No. 99–35845.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 1, 2000

Filed April 9, 2001

---

Darryl L. Thompson, Esq., Anchorage, Alaska, for plaintiffs-appellants John Doe I and Jane Doe.

Verne Rupright, Esq., Wasilla, Alaska, for plaintiff-appellant John Doe II.

Kenneth M. Rosenstein, Assistant Attorney General, Anchorage, Alaska, for the defendants-appellees.

Before: D.W. NELSON, REINHARDT and THOMAS, Circuit Judges.

REINHARDT, Circuit Judge:

This case involves an extremely sensitive and difficult question, both from a social and legal standpoint. How may society deal with convicted sex offenders *after* they have been punished for their crimes? How can society protect itself against future offenses and at the same time safeguard the constitutional rights of persons who have fully paid the price imposed by law for their crimes? The issues treated in the Alaska Sex Offender Registration Act we consider here differ only in degree from a host of other issues the citizens of this country regularly face in trying to resolve the inherent tensions between safety and freedom that exist in any democracy.

As it turns out, we can decide the case before us without having to resolve the most fundamental question posed by the Alaska statute: that is, in light of the fundamental liberty interest protected by the Due Process Clause, may rehabilitation, or a judicial determination of lack of future risk, be wholly ignored when imposing restrictive requirements and obligations on persons who have committed a sexual offense and been fully punished for

their crimes? Instead, we base our decision on a far narrower constitutional provision, the Ex Post Facto Clause.

The plaintiffs in this action are convicted sex offenders who have completed their sentences. They claim that Alaska's sex offender registration and notification statute, enacted after their convictions, both constitutes an ex post facto law and violates their Due Process rights. U.S. Const. Article I, § 10; Amend. 14. Because we conclude that, as to defendants whose crimes were committed before its enactment, the Alaska statute violates the Ex Post Facto Clause, we do not resolve the question whether it also violates the Due Process Clause.

■ The Ex Post Facto Clause serves two purposes: it requires fair notice, and, particularly relevant to the Alaska statute, it acts to "restrai[n] arbitrary and potentially vindictive legislation." *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 138, 3 L.Ed. 162 (1810) (the Ex Post Facto Clause checks "the violent acts which might grow out of the feelings of the moment"). Convicted sex offenders have good reason to fear vindictive legislation. Their crimes are viewed by society as an affront to the institution of the family. More important, many of us fear that upon their release, sex offenders will prey on our children and those of our neighbors.

■ The Ex Post Facto Clause expresses our commitment to constrain the manner in which legislatures can address intense fears of the type evoked by the return to the community of convicted sex offenders. However, its check on legislative power is quite limited—it merely requires that punishment be prospectively imposed. Because the Alaska Sex Offender Registration Act does not comply with this minimal protection, we hold that it

may not be applied to persons whose crimes were committed before its enactment.

## I. BACKGROUND

### A. *Factual background*

On May 12, 1994, Alaska enacted the Alaska Sex Offender Registration Act (sometimes referred to in this opinion as "the Act" or "the Alaska statute"), which requires convicted sex offenders to register with law enforcement authorities and authorizes public disclosure of information in the sex offender registry. 1994 Alaska Sess. Laws 41. In its implementing regulations, Alaska provides that it will, in all cases, post the information from the registry for public viewing in print or electronic form, so that it can be used by "any person" "for any purpose." Alaska Admin. Code tit. 13, § 09.050(a) (2000). Upon passage of the Act, two men required to register, John Doe I and John Doe II, as well as John Doe I's wife, immediately brought a 42 U.S.C. § 1983 action against the state commissioner for public safety and state attorney general to enjoin its enforcement.

In 1985, nine years before the Alaska statute was enacted, Doe I had entered a plea of nolo contendere to a charge of sexual abuse of a minor after a court determined that he had sexually abused his daughter for two years while she was between the ages of nine and eleven. He was sentenced to twelve years incarceration, of which four years were suspended; he was released from prison in 1990. After being released, Doe I was granted custody of his daughter, based on a court's determination that he had been successfully rehabilitated. In making its determination, the court relied, in part, on the findings of psychiatric evaluations concluding that Doe I has "a very low risk of reoffending" and is "not a pedophile." Also,

since his release, Doe I married Jane Doe, who was aware of Doe I's conviction for a sex offense.

Jane Doe is a registered nurse in Anchorage, and is well known in the medical community there. She alleges that disclosure of her husband's criminal background will "undermine [her] professional relationships," and her ability to obtain and care for patients.

The third plaintiff, John Doe II, entered a plea of nolo contendere on April 8, 1984 to one count of sexual abuse of a minor for sexual abuse of a 14–year–old child. He was sentenced to eight years in prison, released in 1990, and subsequently completed a two-year program for the treatment of sex offenders.

## B. *Prior Proceedings*

The plaintiffs filed a complaint in the district court claiming that the Alaska statute violates their federal and state constitutional rights and sought leave to proceed under pseudonyms. The district judge granted a preliminary injunction requiring the plaintiffs to register under the act but prohibiting public disclosure of the registration information; at the same time he denied their request to proceed under pseudonyms. *See Rowe v. Burton*, 884 F.Supp. 1372, 1388 (D.Alaska 1994).[1] The plaintiffs appealed the denial of their use of pseudonyms, and we dismissed the appeal because no final judgment had been entered. On remand, the district judge dismissed the complaint when the plaintiffs

would not amend it to include their real names. The plaintiffs appealed the dismissal, and this court reversed, holding that the plaintiffs could proceed under pseudonyms.

With the nomenclature issue resolved, the parties in 1998 filed cross-motions for summary judgment. A different district judge granted the state's motion, and this appeal followed.[2]

## C. *The Alaska Sex Offender Registration Act.*

The Alaska Sex Offender Registration Act was enacted at a time when the state legislature perceived that Alaska's high rate of child sexual abuse constituted a "crisis." Legislators heard testimony that Alaska's rate of child sexual abuse was the highest in the country, that one-fourth of Alaska's prison inmates were incarcerated for sexual offenses, and that in 1993, one hundred sex offenders were scheduled for release from prison. On May 12, 1994, Alaska enacted its sex offender registration statute, and subsequently amended it in 1998 and 1999. 1998 Alaska Sess. Laws 81 & 106 (adding crimes to the list of "sex offenses" requiring registration); 1999 Alaska Sess. Laws 54 (defining "conviction").

The Alaska statute has two main components: it requires sex offender registration, with criminal penalties for failure to register, and it authorizes full disclosure of information about all offenders to the public. The registration provisions require

---

1. When the complaint was filed, Doe I used the pseudonym "James Rowe." However, the court subsequently changed his pseudonym to "John Doe I" after an individual named James Rowe complained that he was suffering ill effects from Doe's use of the name in this matter.

2. We offer no comment on the tortured course of the proceedings in this case or the

fact that it is now seven years since the Alaska statute was enacted. We observe only that we now add to this judicial odyssey by deciding the case on the narrower of the two constitutional grounds, as that affords appellants all the relief they seek. The question whether the statute offends the rights of persons whose crimes were committed after its enactment will have to wait for another day.

persons convicted of a broad range of offenses against children and adults to register in person with local police authorities. Such offenses include, for example, sexual assault and possession of child pornography.[3] Alaska Stat. § 12.63.100(1)(B). Registrants must be photographed, provide fingerprints, and provide the following information: name, date of birth, address, place of employment, and information about the conviction (specifically the crime, date of conviction and place of conviction). Alaska Stat. § 12.63.010. Those convicted of "aggravated" sex offenses must register in person at their local police stations four times each year for life; those convicted of other sex offenses must register in person annually for fifteen years. Alaska Stat. § 12.63.020.

Information collected under the Alaska Sex Offender Registration Act is forwarded to the Alaska Department of Public Safety, which maintains a central registry. Alaska Stat. § 18.65.087. The parties agree that the Department of Public Safety has published the collected information on its internet website, making it readily available to all persons world-wide. The information on the website, which can be searched by name, partial address, zip code or city, includes the offender's name, color photograph, physical description, street address, employer address and conviction information, all under the banner "Registered Sex Offender."

## II. EX POST FACTO CLAIM

■ The Ex Post Facto Clause prohibits states from enacting any law that "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 391, 1 L.Ed. 648 (1798). There is no question that the Alaska statute, by its terms, applies to the plaintiffs even though their crimes were committed before its enactment. However, the question when considering whether a retroactively applicable statute is subject to the constraints of the Ex Post Facto Clause is not whether it "produces some ambiguous sort of 'disadvantage,' . . . but . . . whether [it] . . . increases the penalty by which a crime is punishable." *California Dep't of Corr. v. Morales,* 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). The key issue in this case is whether or not the Act is punitive, because only punitive statutes implicate the Ex Post Facto Clause.

■ Whether a statute should be classified as imposing punishment involves a two-step inquiry. We must first consider whether, when enacting the Act, the Alaska legislature "indicated either expressly or impliedly a preference for one label or the other." *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). If we conclude that the legislature's intent was punitive, our inquiry is at an end. *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). If we conclude that the legislature did not intend the statute to be considered punitive, or that its intent is ambiguous, then we must inquire whether the statute is "so punitive either in purpose or effect" that it should be considered to constitute punishment. *Ward,* 448 U.S. at 249, 100 S.Ct. 2636. This two-step inquiry is known as the "intent-effects test."[4]

---

**3.** Other offenses include child kidnaping, felony sexual assaults, sexual abuse of a minor, incest, unlawful exploitation of a minor, promoting or forcing a minor to engage in prostitution, distribution of child pornography, felony indecent exposure, and misdemeanor indecent exposure where the victim is under 16 and the defendant has a prior conviction for certain offenses. Alaska Stat. § 12.63.100.

**4.** The test is somewhat confusing, because the "effects" prong includes an exploration into

*Russell v. Gregoire,* 124 F.3d 1079, 1086 (9th Cir.1997).

In other Ex Post Facto challenges to state sex offender registration and notification laws, some courts of appeals have analyzed separately the registration and notification provisions while others have looked to the statute as a whole. *Compare Russell,* 124 F.3d at 1087, 1089 (separately considering the registration and notification provisions); *Doe v. Pataki,* 120 F.3d 1263, 1276 (2d Cir. 1997) (same) *with Cutshall v. Sundquist,* 193 F.3d 466, 473–76 (6th Cir.1999) (considering registration and notification provisions together). The Alaska legislature enacted the Alaska statute as a single piece of legislation, and the notification and registration provisions operate in tandem. Neither the structure of the statute nor the excerpts of the legislative debate included in the record indicate that the provisions were viewed as serving separate purposes. Nor does the state suggest on this appeal that the provisions should be treated separately for purposes of our constitutional analysis. Moreover, an Alaska intermediate appellate court recently considered the statute as a whole when deciding an Ex Post Facto challenge. *See Patterson v. Alaska,* 985 P.2d 1007, 1011–13 (Alaska Ct.App.1999). After reviewing the structure of the statute and its legislative history, we agree with the Alaska court that the proper approach is to analyze the statute as a whole.[5]

## A. *Intent of the Alaska Sex Offender Registration Act*

To determine the legislature's intent when enacting the Alaska Sex Offender Registration Act, we consider the body's declared purpose, the structure of the statute, and its design. *Russell,* 124 F.3d at 1087. Here, this examination produces conflicting signals as to whether the legislature intended the Act to be regarded as punitive.

One factor recently relied upon by the Supreme Court in determining whether a legislature intended a statute to be considered punitive is the statute's placement in the state code. When considering a civil commitment statute for sexual predators, the Court explained that the state's intent was not punitive on the basis of the fact that the provision was placed in the state's civil code, rather than in its criminal code. *Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); *see Femedeer v. Haun,* 227 F.3d 1244, 1249 (10th Cir.2000); *but see Cutshall v. Sundquist,* 193 F.3d 466, 474 (6th Cir.1999)

---

both the effects of the statute and its actual purpose. The legislature's purpose is, of course, necessarily considered in the examination conducted under the first prong (the intent prong) of the test.

5. *Patterson* concluded that neither the intent nor the effects of the Alaska statute were punitive. *Patterson,* 985 P.2d at 1013. Determining "whether a particular [statute] is civil or criminal is a matter of statutory construction." *Ward,* 448 U.S. at 248, 100 S.Ct. 2636. While we regard as "authoritative" the construction of a statute rendered by the state's highest court, *Russell,* 124 F.3d at 1090, we are *not* obligated to adopt that court's legal conclusion with regard to whether a legisla-

ture's purpose in enacting a statute is to punish. *Kansas v. Hendricks,* 521 U.S. 346, 365, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). In other words, we defer to a state highest court's determination concerning what the statute means, but we determine independently whether that meaning renders a statute punitive or not. Of course, we are not obliged to accept the *Patterson* court's construction of the Alaska statute because *Patterson* is not a decision of the Alaska Supreme Court. While we find some of its analysis persuasive, we ultimately reach the opposite conclusion as to whether, for Ex Post Facto purposes, the statute should be considered punitive.

("location within criminal procedure laws does not necessarily indicate an intent on the part of the legislature to punish"); *Doe v. Pataki*, 120 F.3d 1263, 1277–78 (2d Cir. 1997) (finding intent of statute non-punitive although it is placed in the state code's "Corrections Law" volume). The Alaska statute's placement provides conflicting signals as to whether the legislature intended it to be regarded as punitive.

The legislature codified the registration portion of the Act within Title 12 of the Alaska Code, which is entitled "Criminal Procedure," while codifying the notification provisions in Title 18, entitled "Health, Safety and Housing." If the statute were intended to be regarded as a non-punitive public safety measure, one would expect that it would have been placed entirely within the title of the Alaska code governing "Safety": Title 18. Title 18 includes chapters concerning sexual assault investigations (chapter 68); police protection (chapter 65); and even a registration provision (chapter 75, concerning licensing and control of dogs). Placement of the sex offender act's registration provisions in Title 12, suggests that the legislature was more concerned with the fact that the offenders are convicted criminals than with public safety administration.[6]

While the placement of the Act within the Alaska's code provides some evidence that it was, at least in part, intended to be punitive, two aspects of its design, in particular, provide much stronger evidence of punitive intent. The Act requires that when a defendant is sentenced for a sex offense, the registration and notification provisions are to be made a part of the criminal judgment against him. 1994 Alaska Sess. Laws 41, § 11. Alaska criminal judgments must include the defendant's plea, the verdict or findings, and the adjudication and sentence. Alaska Rule of Crim. P. 32(b). In the case of someone convicted of a sexual offense, "the written judgment must [also] set out the requirements of [the Act]." Alaska Rule of Crim. P. § 32(c). Directing courts to include the registration and notification requirements of the Act in judgments evinces an intent that the application of its provisions to the defendant be regarded as part of his punishment for the crime, because the purpose of the judgment is to set forth the crime and punishment.[7]

Furthermore, the Act amends the state's rules of criminal procedure to compel judges to advise defendants about the Act's requirements before accepting guilty pleas. Alaska Rule of Crim. P. § 11(c). Making notice of the registration requirements a prerequisite for an informed guilty plea strongly suggests that the legislature acknowledges that the requirements constitute punishment.

---

**6.** However, the fact that the notification provisions are placed in Title 18 suggests that the legislature's intent may have been non-punitive.

**7.** It could be argued that the legislature ordered courts to notify defendants of the Act's provisions when they are convicted simply as a means of providing notice to the defendants of its requirements. However, this argument ignores the fact that the "notice" is made part of the judgment, which is the legal statement of punishment. The Rule 32(b) requirements do not require judgments to contain any information except that relating to the crime

and the punishment for the crime, even though notice of other facts usefully could be communicated at that time. For example, the rule does not require notice of the right to appeal as part of the judgment. Such notice must be given by the judge at the time of sentencing, but it is not part of the official judgment against the defendant. Alaska Rule of Crim. P. § 32.5. While the defendant only has thirty days to file an appeal, if he is incarcerated at the time of conviction, he need not register as a sex offender until 30 days before he is released from prison. Rule 32.5; Alaska Stat. § 12.63.010(a)(1) (1999).

While the structure and design of the statute indicate that it is intended to be regarded as punitive, the Act's legislative findings indicate otherwise. Section 1 of the Alaska statute states:

"The legislature finds that

(1) sex offenders pose a high risk of reoffending after release from custody;

(2) protecting the public from sex offenders is a primary governmental interest;

(3) the privacy interests of persons convicted of sex offenses are less important than the government's interest in public safety; and

(4) release of certain information about sex offenders to public agencies and the general public will assist in protecting public safety."

1994 Alaska Sess. Laws 41, § 1.

These findings indicate that the legislature viewed the Act as a measure designed to accomplish a non-punitive purpose—protection of the public through the collection and release of information. *Patterson,* 985 P.2d at 1011 (findings make clear that legislature viewed "recidivism of sex offenders [as] a problem," and sought to address the problem through "the release of certain information").

We recently considered whether Washington's sex offender registration statute violated the Ex Post Facto Clause. *See Russell v. Gregoire,* 124 F.3d 1079 (9th Cir.1997). In *Russell,* we determined that Washington's far more narrowly drawn and limited statute did not violate that Clause because it could not be considered punitive. *Id.* at 1089, 1093. We looked to legislative findings that included a statement that it is Washington's policy to better enable law enforcement "to protect their communities by regulating sex offenders," and found that statement conclusive of the fact that the intent of the law

was regulatory, not punitive. 124 F.3d at 1087. In the present case, however, while the legislative findings provide some support for the proposition that the Act is not intended to be punitive, the findings are by no means conclusive. Here, as we have explained above, unlike the Washington statute, the structure and design of the Alaska Act support the contrary conclusion: that the legislature intended that the statute be punitive.

Having carefully considered both the legislative findings and the statute's structure and design, we conclude that the Alaska legislature has not clearly expressed its intent as to whether or not the Act should be considered punitive. Thus, we now turn to the "effects" prong.

### B. *The Alaska Statute's Punitive Effect*

When a legislature plainly states its intent that a statute is *not* punitive, courts must "reject the legislature's manifest intent only where a party challenging the statute provides the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the State's intention." *Hendricks,* 521 U.S. at 361, 117 S.Ct. 2072 (internal quotations omitted); *Russell,* 124 F.3d at 1087. In this case, however, because we have concluded that the legislative intent is unclear, the "clearest proof" test does not apply and, in examining the statute's effects, we apply ordinary and customary legal standards. *See Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

*Mendoza–Martinez* instructs us to consider seven factors when applying the effects prong of the two-step test. *Id.* ("[a]bsent conclusive evidence of congressional intent as to the penal nature or a statute, [the seven factors listed below]

must be considered in relation to the statute on its face").

1) whether the sanction involves an affirmative disability or restraint;

2) whether it has historically been regarded as a punishment;

3) whether it comes into play only on a finding of scienter;

4) whether its operation will promote the traditional aims of punishment—retribution and deterrence;

5) whether the behavior to which it applies is already a crime;

6) whether an alternative purpose to which it may rationally be connected is assignable to it; and

7) whether it appears excessive in relation to the alternative purpose assigned.

*Mendoza–Martinez,* 372 U.S. at 168–69, 83 S.Ct. 554.

We applied these factors in *Russell* in order to determine whether Washington's narrowly drawn and strictly limited sex offender registration statute violated the Ex Post Facto Clause, and we held that it did not. *Russell,* 124 F.3d at 1089, 1093. Here, the application of the seven factors leads us to the conclusion that Alaska's statute, which is far broader and far more punitive in nature than Washington's, *is* designed to punish sex offenders, and thus does offend the Ex Post Facto Clause.[8]

1. *Affirmative disability or restraint*

The Alaska Sex Offender Registration Act imposes an affirmative disability on the plaintiffs. First, its registration provisions impose a significant affirmative disability by subjecting offenders to onerous conditions that in some respects are similar to probation or supervised release. Like Washington's sex offender registration statute, Alaska's requires offenders being released from confinement to register. Alaska Code § 12.63.010(a); *Russell,* 124 F.3d at 1082. However, unlike the Washington statute, Alaska's requires sex offenders such as the plaintiffs to re-register at police stations four times each year every year of their lives. Alaska Code § 12.63.010(d). Moreover, in order to do so, they must appear in person at a police station on each occasion, and provide, under oath, a wide variety of personal information, including address, anticipated change of address, employer address, vehicle description, and information concerning mental health treatment for any "mental abnormality or personality disorder." § 12.63.010(b).

In *Russell,* we concluded that Washington's registration provisions did not impose an affirmative disability or restraint. *Russell,* 124 F.3d at 1088–89. However, as the state acknowledges, Alaska's registration requirement is vastly more burdensome than the one-time registration requirement at issue in *Russell.* We held in *Russell* that Washington's "simple registration" provision, involving a one-time only registration (except when changing one's address), does not work an affirmative disability or restraint. *Russell,* 124 F.3d at 1082, 1088. In part because Alaska's registration provision is far more onerous, we reach a different conclusion here.

Not only do the Alaska statute's registration provisions impose an affirmative disability, but its notification provisions do so as well. By posting the appellants' names, addresses, and employer addresses on the internet, the Act subjects them to

---

8. As we noted, *supra,* in *Russell* we required a showing of the "clearest proof" because we determined that the legislature's manifest intent was that the statute not be deemed punitive, while here, because the legislative intent is unclear, we do not apply so burdensome a standard.

community obloquy and scorn that damage them personally and professionally. For example, the record contains evidence that one sex offender subject to the Alaska statute suffered community hostility and damage to his business after printouts from the Alaska sex offender registration internet website were publicly distributed and posted on bulletin boards.

In reviewing a sex offender law that authorized public inspection of sex offender records at police departments and permitted newspapers or others to disseminate the information, the Kansas Supreme Court concluded that the law imposed a disability because "[t]he practical effect of such unrestricted dissemination could make it impossible for the offender to find housing or employment." *Kansas v. Myers*, 260 Kan. 669, 923 P.2d 1024, 1041 (1996). Where the impact is substantially less severe, however, the disability is not such as to warrant a finding that the statute is punitive. Such was the conclusion in *Cutshall*, 193 F.3d at 471, where a Tennessee statute limited disclosure of information to the amount "deemed necessary . . . to protect the public concerning a specific sexual offender," and in *Pataki*, 120 F.3d at 1269–70, where a New York act permitted such disclosure only on the basis of an individualized assessment of the risk of recidivism. Alaska's system of posting all sex offenders' information on the internet is far closer to the statutory scheme in *Myers* and, in fact, is likely to have a far greater impact on offenders. Because the internet is much more accessible to the public than records at police departments, the obloquy and scorn noted in *Myers* are more certain to result.

A statute also may be considered nonpunitive where the specific disability is narrow. In *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), the Supreme Court held that a sanction of "occupational debarment" from the banking industry for those found to have misappropriated bank funds is not an "affirmative disability or restraint" because the disability is severely limited. *Hudson*, 522 U.S. at 104, 118 S.Ct. 488. In contrast, in the present case, the procedures employed under the Alaska statute are likely to make the plaintiffs *completely* unemployable. Alaska publishes the names and addresses of the registrants' places of employment on its sex offender internet site, and makes it simple for users of the site to search for the presence of any sex offenders working at a particular place of employment. By doing so, it creates a substantial probability that registrants will not be able to find work, because employers will not want to risk loss of business when the public learns that they have hired sex offenders. This disability is far more substantial than the one at issue in *Hudson*, which merely involved debarment from a single profession. Indeed, the breadth of the impact of the Alaska statute provides strong evidence that the statute's effect is punitive. *See Myers*, 923 P.2d at 1041 (sex offender statute that permits public disclosure of offender's employment information imposes an affirmative disability).

The state argues that *Russell* compels the conclusion that the Alaska statute's notification provisions do not impose an affirmative disability. As noted earlier, however, *Russell* involved a statute with a far more limited notification provision. The Washington statute we considered in *Russell* authorizes release of information only when it has been determined that the specific offender poses a risk of reoffending, and even then, the information disclosed is much more limited than the information Alaska discloses. *Russell*, 124 F.3d at 1082. Furthermore, under the Washington act, disclosure is limited to a narrow geographic area within the state of

Washington, whereas here the notification of a defendant's lurid past is world-wide. *Id.* Moreover, when considering whether Washington's limited notification provisions posed an affirmative disability, we "actively weigh[ed]" the harsh results of the community notification provisions, including "humiliation, ostracism, public opprobrium, and the loss of job opportunities," but decided that the disability was not "so egregious" as to prevent the court from concluding that the statute was regulatory. *Russell,* 124 F.3d at 1092.

In *Russell,* therefore, we *did* determine that the notification provisions imposed an affirmative disability. We made this clear by "actively weighing" the statute's consequences along with the other *Mendoza–Martinez* factors. We ultimately concluded, however, that the disability was insufficient to overcome the clear legislative intent that the statute not be punitive, particularly in light of some of the other relevant *Mendoza–Martinez* factors and the applicability of the "clearest proof" standard.

Considered as a whole, the Alaska statute's registration and notification provisions, impose a significant disability on the plaintiffs. Both the registration and notification provisions are far more burdensome than the provisions we considered in *Russell.* Moreover, the standard of proof we apply here is different than in our earlier case. When the applicable provisions of the Alaska statute are considered together, the first *Mendoza–Martinez* factor clearly favors treating the Act as punitive.

### 2. *Historical treatment*

Sex offender registration and notification statutes are of fairly recent origin.[9]

Other courts considering such statutes consider whether they are analogous to historical shaming punishments. In *Russell,* we concluded that the provisions of the Washington statute were not. *Russell,* 124 F.3d at 1092. We reach the same conclusion here. Accordingly, the second factor favors treating the statute as non-punitive.

### 3. *Finding of scienter*

The third *Mendoza–Martinez* factor is whether the statute's provisions come into effect only upon a finding of scienter. *Mendoza–Martinez,* 372 U.S. at 168, 83 S.Ct. 554. A defendant must be convicted of a sex offense before the Alaska statute's provisions become applicable, and those offenses generally require a finding of scienter. However, some of the offenses that subject an offender to the Act's requirements are "strict liability" offenses that can be committed whether or not the defendant is aware of certain facts that make his conduct criminal. For example, conviction for sexual abuse of a minor under 13 years of age does not require any showing that the defendant knows that his victim is under that age. Alaska Stat. §§ 11.41.434; 11.41.445(b).

▆▆▆ Our inquiry when considering this factor is whether the Act's requirements may be imposed *only* upon a finding a scienter. *Hudson,* 522 U.S. at 104, 118 S.Ct. 488. While the Alaska statute generally requires a finding of scienter, its provisions do not become applicable *only* in such circumstance. Accordingly, like the second *Mendoza–Martinez* factor, this fac-

---

9. The first sex offender community notification statute was enacted by Washington in 1990. Alan R. Kabat, Note, *Scarlet Letter Sex Offender Databases and Community Notification: Sacrificing Personal Privacy for a Sym-* *bol's Sake,* 35 Am.Crim. L.Rev. 333, 334–35 (1998). After the 1994 killing of Megan Kanka in New Jersey, such statutes became widespread. *Id.*

tor supports the conclusion that the Act is not punitive.

### 4. *Traditional aims of punishment*

When a statute promotes the traditional aims of punishment—retribution and deterrence, its effect is more likely to be considered punitive. *Id.* This court has previously held that Washington's statute, which is substantially less onerous than Alaska's, "may implicate deterrence," *Russell,* 124 F.3d at 1091, and the *Patterson* court reached the same conclusion with regard to the Alaska statute. *Patterson,* 985 P.2d at 1012. Accordingly, we conclude that the Act may provide a measure of deterrence; the threat of being subjected to mandatory registration and, particularly, publicly branded a sex offender, may presumably deter some persons who might otherwise become offenders.

While the Alaska statute may have some deterrent effect, it even more directly serves the other traditional aim of punishment—retribution. It is primarily this objective that causes us to weigh the fourth factor on the side of finding the Act punitive. When the *Russell* court determined that the Washington statute was not retributive, it relied in part on the fact that the effect of the statute was not to "labe[l] the offender as more culpable than before." 124 F.3d at 1091. The Alaska statute, in contrast, mandates inclusion of the registration requirements in judgments of conviction, which are the formal documents in which the state describes the defendant's culpability. Alaska Rule of Crim. P. § 32(c). As part of their sentences, sex offenders are notified that, included with the punishment is the obligation to comply with the provisions of the Alaska Sex Offender Registration Act.

Furthermore, the Act's registration obligations imposed on sex offenders appear to be inherently retributive. The duty of sex offenders to report quarterly to their local police stations may be analogized to the duty imposed in a judgment of conviction on other defendants to report regularly to a probation officer or to comply with the conditions of supervised release. Such obligations are part of the punishment meted out through a defendant's criminal sentence. *United States v. Soto–Olivas,* 44 F.3d 788, 790 (9th Cir.1995).

Moreover, the duration of the Act's requirements provides additional support for the conclusion that retribution is an objective of the Act. For offenses that are not classified as aggravated, the Act requires registration for 15 years.[10] Alaska Stat. § 12.63.020(a). However, for each year that an offender fails to comply with the registration requirements, the 15 year period is extended by an additional year. Alaska Stat. § 12.63.020(a)(2). The relationship between failing to renew the registration annually and the statute's non-punitive public safety objective—preventing recidivism—seems tenuous. On the other hand, if registration is punitive, requiring the offender actually to go to the police station and register 15 times (even if it takes more than 15 years when the offender skips some years) achieves a statutory purpose, because the penalty for the sex offense includes the requirement of annual in-person registration 15 separate times.

Finally, that the length of the reporting requirement appears to be measured by the extent of the wrongdoing, not by the extent of the risk posed, indicates that the requirement is retributive. Those convicted of "aggravated" sex offenses must reg-

---

**10.** When an offender is no longer required to register, the state removes his name from the registry, and therefore his information is no longer disclosed to the public. Alaska Stat. § 18.65.087(d)(4).

ister four times each year for the rest of their lives, while those convicted of other sex offenses need only register annually for a period of 15 years. *See* Alaska Stat. § 12.63.020(a). However, it appears that the classification by the Alaska Sex Offender Registration Act of certain offenses as "aggravated" and others as not "aggravated" relates to the gravity of the wrongdoing, not the risk of recidivism posed by the wrongdoers. For example, the difference between first degree sexual abuse of a minor, which is an aggravated sexual offense, and second degree sexual abuse of a minor, which is not considered aggravated, is that the former prohibits someone over 16 from sexually penetrating a child under 13 while the latter prohibits someone over 16 from sexually penetrating a child between the ages of 13 and 15. *See* Alaska Stat. §§ 11.41.434; 11.41.436. This difference appears clearly to be related to the degree of wrongdoing, not the risk of recidivism.

In sum, the Act appears to further the fundamental aims of punishment—retribution and deterrence. While the Act's requirements are not labeled as punishment, their inclusion in the criminal judgment and the nature and extent of their duration suggest that they serve as retribution for the commission of sex offenses. Furthermore, this court has previously recognized that sex offender registration and notification laws may deter those inclined to commit (at least some) sex offenses. *See Russell,* 124 F.3d at 1091. Therefore, this *Mendoza–Martinez* factor supports the conclusion that the Act's effect is punitive.

### 5. *Applies to criminal behavior*

■ That a statute applies only to behavior that is already criminal is an addi-

tional factor supporting the conclusion that its effect is punitive. *Mendoza–Martinez,* 372 U.S. at 168, 83 S.Ct. 554. As the state concedes, the Alaska statute applies only to those "convicted" of specified offenses. Alaska Stat. § 12.63.100(5).

In *Russell,* the fact that the statute applied to Washington sex offenders who were not found guilty of a crime as well as to those who were convicted was central to our conclusion that the Act was not punitive. 124 F.3d at 1091. Washington's statute specifically subjects sex offenders incompetent to stand trial and persons civilly committed as sexual psychopaths to its registration and notification requirements. *Id.* When considering Utah's sex offender registration and notification law, the Tenth Circuit concluded that the "criminal behavior" factor favored classification of the statute as non-punitive because it applied to those found not guilty on the ground of "mental incapacity." *Femedeer,* 227 F.3d at 1252 & n. 3.

■ In contrast to Washington's and Utah's statute, Alaska's applies only to those found "guilty," including those found "guilty but mentally ill." Alaska Stat. § 12.63.100(3). It does *not* cover those found "not guilty by reason of insanity," or otherwise not convicted of a crime or those civilly committed.[11] *Id.* Unlike other states' sex offender registration laws, the Alaska statute's harsh requirements can be imposed only on individuals who have suffered an actual criminal conviction in a court of law. Thus, this factor also provides support for the conclusion that the Act's effect is punitive.

### 6. *Non-punitive purpose*

■ The appellants concede, as they must, that there is an alternative non-

---

11. In Alaska, one who does not understand "the basic nature and quality of his or her conduct" is considered "not guilty by reason of insanity," while one who does not "appre-ciate the wrongfulness of his or her conduct" is considered "guilty but mentally ill." *Alaska v. Patterson,* 740 P.2d 944, 946–49 (Alaska 1987).

punitive purpose, as well as a punitive one, that can rationally be connected to the Act. That purpose, of course, is public safety, which is advanced by alerting the public to the risk of sex offenders in their communities. The existence of a non-punitive alternative purpose for the Alaska statute, protecting public safety, unquestionably provides support, indeed the principal support, for the view that the statute is not punitive for Ex Post Facto Clause purposes.[12]

### 7. Excessiveness

The final, and, in this case, a highly significant, factor in the *Mendoza–Martinez* analysis is whether the Alaska Sex Offender Registration Act "appears excessive in relation to the alternative purpose assigned": public safety. *Mendoza–Martinez*, 372 U.S. at 169, 83 S.Ct. 554. The appellants claim that the Act is excessive in relation to its public safety purpose because it is sweeping and excessive in several respects. They emphasize that the scope of the statute is not limited to those who the state determines pose a future risk to the community: they point out specifically that, once convicted, it does not matter whether a defendant can prove that he has been rehabilitated and that he poses no threat of future criminal conduct. Under the statute, a judicial determination of rehabilitation (such as made in Doe I's case) is irrelevant, and even law enforce-

ment authorities are powerless to limit the widespread public distribution of the injurious, and possibly outdated, information that the statute provides for.

The statute at issue in *Russell* was much more limited than the Alaska statute in numerous respects. Most important to this part of our analysis, it only authorized release of "relevant and necessary information" concerning *certain* sex offenders. *Russell*, 124 F.3d at 1082. In Washington, information about sex offenders was disseminated only if the authorities determined, on an individual basis, that the offender posed a risk of recidivism. *Id.* (citing *Washington v. Ward*, 123 Wash.2d 488, 869 P.2d 1062, 1070 (1994) (en banc) (in many cases, the legislature intended that a sex offender's information would not be released to the public)). Furthermore, in *Russell*, we found it significant that Washington's statute authorized dissemination of information about any particular sex offender only within a "narrow geographic area." *Russell*, 124 F.3d. at 1082. In contrast, in Alaska, information as to all sex offenders is made available world-wide on the internet without any restriction and without regard to whether the individual poses any future risk. Broadcasting the information about all past sex offenders on the internet does not in any way limit its dissemination to those to whom the particular offender may be of concern.[13]

---

**12.** *Russell* states in dictum that even if the non-punitive purpose were merely ancillary to the overriding punitive purpose of the statute, we may still conclude that the statute is not punitive, presumably on the basis of a clear legislative intent and an assessment of the other *Mendoza–Martinez* factors. *See Russell*, 124 F.3d at 1086. We need not examine that dictum here, because in the present case, the legislative intent is unclear and the other factors, taken as a whole, support the conclusion that the Act is punitive. We note, moreover, that under *Mendoza–Martinez*, the finding that an alternative non-punitive purpose exists, an-

cillary or not, clearly does not end the inquiry. Rather, in such cases, the court must proceed to determine, inter alia, whether the alternative purpose "appears excessive in relation to the alternative purpose." *Mendoza–Martinez*, 372 U.S. at 169, 83 S.Ct. 554. We undertake that step in the analysis in the subsection of the text that immediately follows.

**13.** We note also that it does not appear that the legislature, when enacting the Alaska Sex Offender Registration Act in response to concerns about child sexual abuse, made any

With only one exception, every sex offender registration and notification law that has been upheld by a federal Court of Appeals has tailored the provisions of the statute to the risk posed by the offender.[14] *See Cutshall v. Sundquist*, 193 F.3d 466, 474 (6th Cir.1999) (Tennessee statute); *Roe v. Office of Adult Probation*, 125 F.3d 47, 54 (2d Cir.1997) (Connecticut statute); *E.B. v. Verniero*, 119 F.3d 1077, 1098 (3d Cir.1997) (New Jersey statute); *Doe v. Pataki*, 120 F.3d 1263, 1269–70 (2d Cir. 1997)(New York statute). For example, with regard to the Connecticut statute, the Second Circuit concluded that it was not excessive because offenders who were convicted before the statute's enactment are subject to the statute's notification provisions only if, based on an "individualized clinical assessment," they are found to pose a "high risk" of recidivism. *Roe*, 125 F.3d at 54. For offenders convicted after the statute's enactment, the court pointed out, disclosure is limited to specified members of the community, including the victim and his family, the police, the offender's immediate family, other occupants of the offender's residence, and treatment providers, unless the individual offender is determined to be "high risk." *Id.* at 50. Similarly, the Third Circuit upheld the New Jersey statute after finding that New Jersey classifies offenders by risk category, provides no public disclosure for those

who pose the least risk (45 percent of offenders) and widespread disclosure only for those who pose the greatest risk (5 percent of offenders). *E.B.*, 119 F.3d at 1098.

In contrast, as we have noted, the Kansas Supreme Court considered a sex offender registration and notification statute that, like the Alaska statute, allowed unrestricted access to the registration information regardless of risk. *Kansas v. Myers*, 260 Kan. 669, 923 P.2d 1024, 1041 (1996). It concluded that the statute had a punitive effect, and therefore was an unconstitutional ex post facto law, because it was "excessive and beyond that necessary to promote public safety." *Id.* at 1043. Surveying other states' statutes, the Kansas Supreme Court concluded that almost every other state limited access by means such as: 1) basing the type of community notification on the specific risk level assigned to the individual offender (New Jersey, New York); 2) only releasing information to those living in close proximity to the offender (Louisiana); and 3) providing information only to those inquiring about a specific person (Iowa, North Carolina). *Id.* at 1029, 1038. It based its holding that Kansas's broad notification provisions violated the Ex Post Facto Clause on its conclusion that "of the sex offender registration laws that have successfully overcome ex post facto challenges, none have

---

attempt to determine which of the offenses it classified as "sex offenses" were likely to involve recidivism (against either adults or children) and thus which should be included in order to serve the statute's non-punitive purpose—public safety. Rates of recidivism vary considerably depending on the specific sex offense committed. *See* Jane A. Small, *Who Are the People in Your Neighborhood? Due Process, Public Protection, and the Sex Offender Notification Laws*, 74 N.Y.U. L.Rev. 1451, 1458 (1999) (pedophiles, for example, have much higher rates of recidivism than other sex offenders).

**14.** The only exception to this rule is found in an opinion that was filed after oral argument in this case, *Femedeer v. Haun*, 227 F.3d 1244 (10th Cir.2000). That case concerned the Utah sex offender registration and notification statute, which makes the state's entire sex offender registry accessible on the internet. *See id.* at 1247–48. In that case, unlike here, the Tenth Circuit examined whether the "clearest proof" demonstrated that the effects of the statute were punitive, because the Utah legislature's manifest intent was that the statute be regarded as non-punitive. *Id.* at 1249.

(sic) provided for unlimited public access to the registered sex offender information." *Id.* at 1036.

Like the statute at issue in *Myers,* Alaska's statute is exceedingly broad. The unlimited breadth of the Alaska statute weighs strongly in favor of a determination that its effect is punitive. Indeed, the punitive effect caused by the excessiveness of the statute's provisions in relation to its non-punitive purpose is exemplified by John Doe I's case. Convicted of sexual abuse of his minor daughter, Doe I was successfully rehabilitated. After his release from prison, a state court determined that he was not a pedophile, and that he posed a very low risk of reoffending. On that basis, the court returned his minor daughter to his custody. Nevertheless, under the Alaska statute's registration provisions, Doe I would be forced to submit to in-person registration at his local police department four times a year, every year, and, under its notification provisions, he would be compelled forever to suffer the unremitting social obloquy and ostracism that would accompany his being publicly labeled a sex offender on Alaska's world-wide internet website. Presumably, in any state that does not provide for unlimited public disclosure of sex offender information in all cases in which a defendant has ever been convicted of a sex offense, the record of John Doe I's past incest conviction would not be disseminated by state officials to the world at large for the rest of his life.

### 8. *Summary*

In sum, the *Mendoza–Martinez* test leads us to hold that the Act's effect is sufficiently punitive that notwithstanding the legislature's ambiguous intent, the Alaska statute should be classified as punitive for Ex Post Facto Clause purposes. Four of the seven actors favor this result.[15] Two factors, particularly, demonstrate that the effect of this particular statute is to increase the penalty the law provided at the time Doe I and Doe II's offenses were committed. First, there is the substantial disability imposed by the Act. The registration provisions, which require in-person registration at a local police station where registrants must provide detailed information four times each year for life in the case of some defendants, and annually for 15 years in the case of others, are extremely burdensome. This disability is exacerbated by the public notification provisions that plaintiffs' uncontradicted evidence demonstrates exposes all registrants to world-wide obloquy and ostracism. Second, unlike the sex offender registration and notification statutes upheld by the Second, Third and Sixth Circuits, as well as by this Circuit in *Russell,* the Alaska statute is excessive in relation to its non-criminal purpose. An offender cannot escape the Act's grasp no matter how demonstrable it may be that he poses no future risk to anyone, and no matter how final the judicial determination that he has been successfully rehabilitated; in short, under the Alaska statute, the requirements relating to disclosure of a past offense are not related to the risk posed. Furthermore, that the Act applies only to offenders who have been convicted of committing a crime, that its requirements are incorporated in the criminal judgment imposed, and that it otherwise serves retributive ends, provides additional support for our conclusion that the Alaska statute is punitive.

---

**15.** We note that our conclusion is not based on a simple equation in which each factor is given equal weight. Rather, we consider the importance of each factor in relation to the legislative scheme we are examining.

Three factors suggest that the Act is not punitive. The first is the fact that sex offender registration and notification provisions have not historically been regarded as punishment. However, the fact that the Alaska statute is so much more sweeping in its scope than comparable statutes in other states leads us to limit the weight we place on this *Mendoza–Martinez* factor. The second is that it is not imposed only upon a finding of scienter. The relevance of this factor is to assist in the determination of whether the conduct giving rise to the sanction is the sort that traditionally subjects someone to punishment, because in general, *mens rea* is an element of a crime. In this case, however, given that the conduct that does not require a finding of scienter, conviction of offenses such as sexual abuse of a child under 13 years of age, is serious criminal activity, we do not believe that this factor lends much support for the conclusion that the Act is not punitive. The final factor is the fact that the Act has a non-punitive purpose: protecting public safety. Here, we conclude that the additional purpose, while of unquestioned importance, does not serve to render a statute that is so broad and sweeping non-punitive.

No one *Mendoza–Martinez* factor is determinative, and excessiveness, standing alone, would not be dispositive under the *Mendoza–Martinez* test. *Hudson v. United States,* 522 U.S. 93, 101, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). Still, we place substantial weight on the fact that the Act is far more sweeping than necessary to serve its alternate purpose, promoting public safety. This is so not only with respect to the undifferentiated scope of the Act but also with respect to the severity of the disabilities it imposes. When we weigh all the *Mendoza–Martinez* factors together, we conclude, on balance, that for purposes of the Ex Post Facto Clause, the effect of the Alaska statute is punitive.[16]

Because the Alaska Sex Offender Registration Act increases the punishment for sex offenses, the Ex Post Facto Clause limits its application to those sex offenders whose crimes were committed after its enactment. *California Dep't of Corr. v. Morales,* 514 U.S. 499, 504–05, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). · Doe I was convicted in 1985, and Doe II was convicted in 1984. The Alaska legislature enacted the Act in 1994. Therefore, the Alaska statute's application to the appellants violates the Ex Post Facto Clause.

## III. APPELLANTS' OTHER CLAIMS

In addition to their Ex Post Facto Clause argument, plaintiffs claim that the statute violates their procedural and substantive Due Process Clause rights, as well as their federal constitutional privacy rights. Because we conclude that the Ex Post Facto Clause bars the application of the statute to Doe I or Doe II, we need not consider these arguments.[17] Our failure to address them should not be taken, however, as an indication that we do not believe that they have merit.[18]

---

16. We recognize that applying a multi-factor test is frequently not an entirely satisfactory method of resolving legal issues. Sometimes, however, it is the best approach available to courts. In any event, it is the approach that the Supreme Court has held should be applied here. *See Russell,* 124 F.3d at 1086–87.

17. In the complaint, Jane Doe I claims only that her privacy right, and not her Ex Post Facto Clause right, has been violated. Be-

cause we conclude that Jane Doe I's husband, John Doe I, is not subject to the Alaska statute, Jane Doe I will receive all of the relief that she seeks in her complaint, and therefore we need not decide whether the Act violates her privacy right.

18. The state officials argue that our opinion in *Russell* forecloses the appellants' claims, because in that case we held that the Washington sex offender registration and notifica-

## IV. CONCLUSION

We conclude that the Alaska Sex Offender Registration Act violates the Ex Post Facto Clause. We therefore RE-VERSE the district court's orders granting summary judgment for the state officials, and REMAND for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

tion statute does not implicate registrants' federal privacy rights. *See Russell*, 124 F.3d at 1093–94. However, in *Russell*, we made clear that the plaintiffs "fail to explain precisely how the Act violates [their privacy rights] beyond collating and releasing information." *Id.* at 1093. We then rejected their privacy argument after explaining that the mere "collection and dissemination of information" does not violate a privacy interest or amount to a deprivation of liberty. *Id.* at 1094. In this case, plaintiffs allege more that the mere collection and release of information—they assert that the state requires them to appear four times each year at local police stations to answer a host of questions, and labels them "sex offenders" on its internet website, which is accessible world-wide. Furthermore, in contrast to the Washington statute, Alaska's brands plaintiffs sex offenders without any attempt to classify them by risk posed, or to provide them with an opportunity to prove that they have been rehabilitated. While we do not decide whether the Alaska statute infringes on the appellants' due process rights, we doubt that *Russell* fairly could be read to stand for the exceedingly broad proposition urged by the state.