In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-2334

ROBIN O'GRADY, DAVID JAKES, AND
DE TENDEVOUS, INCORPORATED,
AN ILLINOIS CORPORATION,

*Plaintiffs-Appellants*,

*v.*

VILLAGE OF LIBERTYVILLE, AN
ILLINOIS MUNICIPAL CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 5283—**Milton I. Shadur**, *Judge.*

ARGUED JANUARY 8, 2002—DECIDED SEPTEMBER 13, 2002

Before POSNER, COFFEY, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Robin O'Grady and David Jakes opened De Tendevous, Inc., a personal services salon, in Libertyville, Illinois in April 1999. (For convenience, we refer to all three as "De Tendevous" in this opinion). De Tendevous's problems began shortly thereafter, when a sting operation by the Libertyville police discovered evidence of prostitution at the salon. Shortly before the bust,

the Village of Libertyville had passed Village Ordinance 99-0-56 (the Ordinance), regulating the operation of massage parlors and requiring that they be licensed. Rather than applying immediately for a license under the new ordinance, De Tendevous turned to the federal court with this suit challenging the Ordinance and requesting a temporary restraining order from enforcement of the licensing requirement. The complaint also alleged that a violation of the plaintiffs' Fourth Amendment rights occurred when building inspectors conducted a search of the salon's premises. Later, after De Tendevous had unsuccessfully applied for a license, it also attempted to contend that the denial was unlawful. The district court construed De Tendevous's claims as (1) a claim that the ordinance was unconstitutional because it violated the Ex Post Facto Clause of the Constitution; (2) an allegation of a § 1983 violation by the Village for the search of the premises at the time of the sting operation; and, (3) a contention that the denial of a license was unlawful under state law. It then granted summary judgment in favor of the Village on all counts. This appeal followed. Finding De Tendevous's arguments to be totally without merit, we affirm the judgment of the district court.

# I

While De Tendevous ostensibly offered nail, tanning, waxing, and massage services, as it declared in a zoning application filed in April 1999, it apparently also provided sexual services.

On July 22, 1999, Village police conducted their sting operation. During the sting, Meloni Goodson, a De Tendevous masseuse, was arrested for performing sexual acts on a police officer. She was later convicted on prostitution charges based on this occurrence. The officers searched the premises incident to Goodson's arrest after obtaining con-

sent from De Tendevous's receptionist; neither O'Grady nor Jakes was present at the time. The search uncovered evidence of prostitution and alerted the officers to possible building code violations. This led them to call in a building inspector, who searched the premises, again with the receptionist's consent, and took note of several violations. When he was finished, the inspector "red-taped," or shut down, the massage parlor. De Tendevous reopened several days later, apparently in compliance with the building code (but still unlicensed).

On July 13, 1999, prior to the sting operation, De Tendevous received a copy of a letter from Libertyville's Chief of Police, advising all massage establishments that a new Village ordinance, Ordinance 99-0-56, had been passed on June 22 to regulate the operation of massage parlors. Among other things, the Ordinance required massage establishments to be licensed, to be run by a certified massage therapist, and to be in compliance with certain standards of decency and hygiene. Every masseur or masseuse employed had to be licensed by the Village after obtaining certification from an accredited massage institution that required at least 500 hours of classroom study and another 100 hours of clinical experience. The July 13 letter estimated that the effective date of the Ordinance would be July 23, 1999.

Aside from the July bust, nothing happened for a few months after the effective date of the Ordinance, even though De Tendevous had not applied for a license. On October 4, the Chief of Police requested that De Tendevous cease offering massage services immediately because it was operating without a massage license in violation of the Ordinance. That finally prompted De Tendevous to apply for the license, but the Village Administrator denied the application on April 3, 2000. A hearing to challenge the denial took place on June 7, 2000, before Village President Duane Lusaka. President Lusaka affirmed the denial of the

license on the grounds that Jakes, considered a manager of De Tendevous, did not qualify as a certified massage therapist as required by the Ordinance, and that the prostitution conviction of one of the employees would have been grounds for revoking the license under the Ordinance and was, *a fortiori*, a ground for refusing to issue a license in the first place.

A month after receiving notification of the newly passed Ordinance (and six and a half months before applying for a license) De Tendevous filed this lawsuit against the Village. In March 2000, both parties filed motions for summary judgment and cross-responses. The Village's motion argued that the Ordinance was not properly subject to this dispute because the Village never attempted to enforce it against De Tendevous, and that in any event its enforcement (subsequent to the filing of the complaint) was in accordance with all the process due. As to the Fourth Amendment claim, the Village argued that municipal liability for an unconstitutional policy or custom needed to be proved but was not alleged by De Tendevous. De Tendevous's motion for summary judgment focused on entirely different issues. For the first time, De Tendevous argued that the Ordinance should be invalidated as an *ex post facto* law under article I, § 10, clause 1, of the United States Constitution, a claim that it asserted was encompassed within Count I of its complaint. The principal reason it gave in support of this argument was the brief period of notice the Village gave De Tendevous to come into compliance with its new obligations: "only" 14 days. It also argued that it was impermissible to deny De Tendevous a license because of Goodson's prostitution conviction and Jakes's lack of a massage therapy certificate.

The district court entered summary judgment for the Village on all counts and denied De Tendevous's motion. On the Fourth Amendment claim, it found for the Village because of De Tendevous's failure to present evidence that

the Village had a policy or custom of performing unreasonable searches—evidence that was necessary to establish municipal liability under *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). As to the compatibility of the Ordinance with the Ex Post Facto Clause, the district court (construing the complaint liberally to encompass this kind of claim) found that De Tendevous had standing to bring the challenge, but that on the merits the allegation was frivolous, because the Ordinance was not a penal statute nor did it purport to render illegal any operation of a massage establishment before its effective date. With respect to the alleged violation stemming from the use of the prostitution conviction as grounds to deny the license application, the court found that the issue was not properly before it, as there was no mention of it in the complaint. Finally, the district court dismissed the claim based on the denial of the application because it was not pleaded in any amended complaint and because there was no reason to exercise supplemental jurisdiction over it once the court disposed of the federal claims.

## II

On appeal, De Tendevous presents two issues: that the Ordinance is an *ex post facto* law (principally because it did not allow De Tendevous sufficient time to comply) and that the decision to deny the license was not justified. We review a district court's grant of summary judgment *de novo*, examining the facts in a light most favorable to the non-moving party, and drawing all reasonable inferences in its favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

### A. *Ex Post Facto* Argument

While De Tendevous did not advance a theory of an *ex post facto* violation until the summary judgment stage, we

agree with the district court that the complaint was adequate to put the Village on notice of such a claim. A plaintiff is not required to set forth a legal theory to match the facts, so long as some legal theory can be sustained on the facts pleaded in the complaint. See, *e.g.*, *Wudtke v. Davel*, 128 F.3d 1057, 1061-62 (7th Cir. 1997) (no particular legal theory needs to be specified, so long as the facts put the defendant on notice). While the theory that De Tendevous originally put forth was a due process/takings claim, the facts alleged are sufficient to support a claim that the Ordinance would have violated their constitutional rights if it were found to be an *ex post facto* law.

A law violates the Ex Post Facto Clause, see U.S. CONST. art. I, § 10, cl. 1, if it punishes as criminal conduct an act that was innocent when done, or makes more burdensome the punishment for a crime after its commission. *Collins v. Youngblood*, 497 U.S. 37, 41-42 (1990). The clause is aimed solely at penal statutes. See *Kansas v. Hendricks*, 521 U.S. 346, 370 (1997); *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390-392 (1798). There is a sense in which the Ordinance at issue here has a penal aspect, as its application may give rise to criminal penalties. For instance, to the extent that De Tendevous continued providing massage services after it received the Chief of Police's letter, it was subject to the penalties set forth in Section 13-122 of the Ordinance: "Every person . . . who gives massages or operates a massage establishment . . . without first obtaining a license . . . shall be guilty of a misdemeanor and upon a finding of guilty such person shall be punished by a fine of not less than Two Hundred Fifty Dollars." However, a law is not an *ex post facto* law if it does not aim to serve solely punitive goals. See *Bae v. Shalala*, 44 F.3d 489, 492-94 (7th Cir. 1995); *Gilbert v. Peters*, 55 F.3d 237, 238-39 (7th Cir. 1995). In the case of the Village's Ordinance, there are aims other than punitive ones that motivated the enactment of the Ordinance. The purpose of the legislation is one of the

main indications of whether a law should be deemed punitive in nature. See *Trop v. Dulles*, 356 U.S. 86, 96 (1958). The preamble to the Ordinance mentions a number of non-punitive reasons for its passage, including the prevention of the use of massage parlors as places of prostitution, the preservation of the public health, safety, and welfare of the Village, and the desire to prevent the spreading of disease through unsanitary practices and facilities.

Most importantly, however, even assuming that the Ordinance was a penal statute, the Ex Post Facto Clause applies only to laws that render illegal—or punish more severely—conduct performed before the day the law was put into effect. See, *e.g.*, *California Dept. of Corrs. v. Morales*, 514 U.S. 499, 506 n.3 (1995) (inquiry focuses on whether a new law "alters the definition of criminal conduct or increases the penalty by which a crime is punishable."). Village Ordinance 99-0-56 is entirely prospective in operation: it does not aim to punish conduct that was deemed innocuous prior to its passage. The Supreme Court stressed this point in *Lynce v. Mathis*, 519 U.S. 433, 441 (1997), quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981): a necessary (though not sufficient) characteristic of a law that violates the clause is that it must "'apply to events occurring before its enactment.'" De Tendevous does not contend that the Village tried to apply the Ordinance to events prior to its enactment, or that the Ordinance on its face applies to such events. By its terms, the Ordinance attaches penalties only to salons operating without a license after its effective date—and there is nothing retroactive about that.

De Tendevous next argues that a denial of the license based on an arrest that occurred prior to the passage of the Ordinance amounts to a retroactive form of punishment. This argument is misguided for several reasons. As an initial matter, if anyone can assert such a claim, it is Meloni Goodson, whose unlawful sexual act is now subject to more consequences than it was at the time she performed

it (although, because the new consequences are not punitive for her, there is no *ex post facto* problem in Goodson's case either). De Tendevous has no stake in how severely Goodson is punished. More fundamentally, it is not a violation of the Ex Post Facto Clause to disqualify persons based on prior acts from a certain state-based entitlement, if that denial is a reasonable means for achieving a legitimate state aim. See *De Veau v. Braisted*, 363 U.S. 144 (1960) (upholding statute disqualifying ex-felons from waterfront union office even though their convictions were prior to the passage of the statute). (We recognize that courts have disagreed about what it takes to categorize a statute as punitive, and that the Ninth Circuit has held that Alaska's sex offender registration law requiring convicted sex offenders to register with the police is punitive for purposes of the Ex Post Facto Clause. See *Doe I v. Otte,* 259 F.3d 979 (9th Cir. 2001), *cert. granted*, 122 S. Ct. 1062 (2002) (No. 01-729). The Libertyville ordinance, however, on its face does nothing more than establish prospective criteria for licensing a type of commercial establishment. It does not pile on additional disabilities for convicted individual offenders like the Alaska statute in *Doe I*. Thus, we do not believe that the Supreme Court's forthcoming decision in *Doe I* is likely to affect our analysis here.)

De Tendevous's last attempt to squeeze the Ordinance under the Ex Post Facto Clause is creative at best. As the law requires that massage therapists be certified, and certification requires at least 500 hours of study, De Tendevous argues that it was impossible for existing therapists to come into compliance between the time of the law's passage and its effective date. While this may be true, it is of no help to De Tendevous. The masseuses do not face punishment for providing unlicensed massages in the past, and surely De Tendevous does not suggest that going forward there are no properly certified masseuses who could have been hired by the salon. There simply is no *ex post facto*

problem absent retrospective application of the Ordinance to the pre-Ordinance activities. See *Lynce*, 519 U.S. at 441. (As an aside, had its employees begun the requisite training when De Tendevous first learned about the ordinance, they would have had plenty of time to complete it before the Village police came knocking on their doors months after the enactment of the Ordinance.)

Finally, De Tendevous concedes in its appellate brief that "the Ordinance may not, technically, punish past actions." We agree that the Ordinance does no such thing, and as retroactivity is a central requirement for finding an *ex post facto* violation, *Collins*, 497 U.S. at 43, De Tendevous's entire argument fails.

## B. Denial of the License

De Tendevous's second argument is that the Village denied its application for a license for the wrong reasons. The district court declined to entertain the issue because it was not properly pleaded and because, as a claim arising under state law, it was best to dismiss it without prejudice once the federal issues had been disposed of. A decision to dismiss supplemental state-law claims after the dismissal of the federal claims is reviewed for abuse of discretion. *Landstrom v. Illinois Dept. of Children & Family Servs.*, 892 F.2d 670, 679 (7th Cir. 1990).

We agree with both grounds the district court invoked for rejecting De Tendevous's second claim and see no need to elaborate much further here. The original complaint said nothing about the denial of the license because De Tendevous had not yet applied for a license when it filed the complaint. Even after De Tendevous obtained leave of the court to file an amended complaint in November 1999, it failed to do so. The Village properly objected when De Tendevous tried to introduce the argument at the summary

judgment stage, and the district court was well within its discretion to rule that the issue had not been properly presented. Furthermore, having dismissed all the federal causes of action, the district court did not err in dismissing the state law claim. While 28 U.S.C. § 1367(a) gives a federal court supplemental jurisdiction to decide state law claims that form part of the same claim or controversy on which the federal law claims are based, 28 U.S.C. § 1367(c) provides that a district court may decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). That is what the district court did here, quite reasonably. The federal courts have little or nothing to say about whether a Village president properly applied a Village ordinance to a local establishment.

We AFFIRM the judgment of the district court.


A true Copy:

         Teste:


                              _____
                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*


USCA-97-C-006—9-13-02