# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

Nos. 02-4186 & 02-4189

NATHAN NEFF and ROBERT ROBB,

*Plaintiffs-Appellants*,

v.

CAPITAL ACQUISITIONS & MANAGEMENT COMPANY
and CAPITAL ONE, F.S.B.,

*Defendants-Appellees.*

————————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 02 C 4434 & 02 C 5829—**James F. Holderman**, *Judge.*

————————

ARGUED SEPTEMBER 12, 2003—DECIDED DECEMBER 15, 2003

————————

Before BAUER, KANNE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* In 1990, Citibank issued a credit card to Nathan Neff, who fell behind on his account.[1] Like

---

[1] In 1998, 67.5 percent of Americans had a credit card, and 54.7 percent had account balances after paying their most recent bills. *See* U.S. Census Bureau, U.S. Dep't of Commerce, Statistical Abstract of the United States 728, tbl. 1166 (2002). Among those having a balance, the medium amount of debt totaled $1,900, and over a quarter of Americans (26.9 percent) "hardly ever pay off the

(continued...)

many credit card accounts, moreover, his was sold[2] as delinquent to Capital One, one of the defendants in this case. In 1997, while Capital One held the account, a collection agency, Northland Group, sent Neff a letter stating that his balance was $1,330 but that he could settle up by paying $536. Neff says he paid that amount with a money order marked "payment in full."

Over the next 5 years, Neff assumed that his Citibank debt was satisfied. He received no monthly statements, or for that matter any correspondence at all, which would have alerted him to the fact that someone thought his account remained open and that it was accumulating interest at a staggering rate. In 2002, Neff received a letter from Capital Acquisitions & Management Company (CAMCO), an entity that purchased his account from Capital One, claiming that he now owed $2,835.32, most for interest accumulated over the years.

Like Neff, Robert Robb opened his mail one day and learned that CAMCO said he owed money on a credit card account he thought had been settled long ago. In 1990, a company called "First Card" issued Robb a credit card. Robb fell behind on payments and First Card sold the account as delinquent to Capital One. Robb claims that the account was settled and that he heard nothing until 2002, when he received a letter from CAMCO notifying him that it had purchased his account and that he owed almost $7,000, the majority for accumulated interest. Like Neff, Robb never

---

[1] (...continued)
balance." *Id.* The government estimates that in 2000 there was $683 billion of outstanding credit card debt. *Id.*, tbl. 1165.

[2] In 2002, card companies sold $46.29 billion worth of delinquent card portfolios, up 25 percent from 2001. Ellen Kelleher, "Debt Collectors Prosper on Bad Loan Bargains," *Financial Times* (London), Sept. 12, 2003.

received monthly statements or correspondence of any sort that would have put him on notice that he had outstanding debt which was accumulating interest at a high rate.

We do not know what has become of the claims by Capital One and CAMCO that Neff and Robb still owe money on their old credit card accounts with Citibank and First Card. If, as Neff and Robb allege, the accounts were settled long ago, we can only assume that the claims against them have dried up. But in these cases, it is Neff and Robb who take the offensive, alleging that Capital One and CAMCO violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (TILA), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA), and the Illinois Consumer Fraud Act when they attempted to impose and collect interest on revolving credit accounts without sending monthly statements to them.

The district court court dismissed their complaints of federal violations on a Rule 12(b)(6) motion,[3] and we review its order *de novo* on Neff and Robb's appeal.

Understandably, both Neff and Robb were surprised when they received letters from CAMCO telling them they owed money on credit card charges going back almost 10 years. Not only did they (if their story is accurate) assume that they owed no money on the accounts, but they were surely shocked to be told that they also owed an enormous amount of interest. While we are sympathetic to Neff's and Robb's situation, the district court was correct in granting Capital One and CAMCO's motion to dismiss.

Under TILA, only "creditors" are required to send consumers monthly billing statements. 15 U.S.C. § 1637(b).

---

[3] After dismissing the federal claims, the court declined to exercise supplemental jurisdiction over the state claim.

Neff and Robb argue that Capital One and CAMCO became credit card issuers, and thus creditors under the purview of TILA, when they purchased the open accounts. See 15 U.S.C. § 1602(f) (defining creditor as any person who issued an open-ended credit card). To meet this definition, however, Capital One and CAMCO must have either "issued a credit card" or been the issuer's "agent." 15 U.S.C. § 1602(n). Neither defendant meets either requirement.

To begin, neither one issued Neff or Robb a "credit card," something that is able to access a line of credit. Official staff commentary to Regulation Z, 12 C.F.R. pt. 226, Supp. 1 at ¶ 2(a)(15)-2.[4] Neither CAMCO nor Capital One granted Neff and Robb the right to "incur debt" or to "defer payment of debt." 15 U.S.C. § 1602(e); *American Express Co. v. Koerner*, 452 U.S. 233, 240-41 (1981). Neff and Robb could not go to the store and make a purchase on Capital One or CAMCO credit. In fact, the defendants granted Neff and Robb no credit privileges at all. Because neither Capital One nor CAMCO issued Neff or Robb a "credit card," they are not "card issuers" under the Act.

Nor can Capital One and CAMCO be considered "agents" of "card issuers." 15 U.S.C. § 1602(n). To become an agent, there must be an agreement that "the cardholder may use a line of credit with the financial institution to pay obligations incurred by use of the credit card." 12 C.F.R., pt. 226, Supp. I, ¶ 2(a)(7). As explained above, Neff and Robb had no credit privileges with Capital One or CAMCO. No contractual relationship existed, moreover, between the original

---

[4] Congress delegated to the Federal Reserve Board the task of carrying out TILA, see 15 U.S.C. § 1604(a). The Board's interpretation of both TILA and Regulation Z, including the official commentary, is entitled to great deference. *See Hardison v. General Fin. Corp.*, 738 F.2d 893, 895 (7th Cir. 1984).

card issuers, Citibank and First Card, and the defendants. All Citibank and First Card did was sell Robb's and Neff's accounts. That is not sufficient to deem Capital One and CAMCO the agents of Citibank and First Card.

Since we conclude that neither Capital One nor CAMCO are creditors under TILA, Neff's and Robb's reliance on the rule for when "creditors" are permitted to stop sending statements is misplaced. See 12 C.F.R. § 226.5(b)(2)(i); 12 C.F.R. pt. 22d, Supp. I, ¶ 5(b)(2)(i)-2. These regulations apply only to "creditors," and thus, as discussed above, the defendants had no obligation to send such statements in the first place. *See Lilly v. Internal Revenue Serv.*, 76 F.3d 568, 571 (4th Cir. 1996) ("If a statute defines a term in its definitional section, then that definition controls the meaning of the term whenever it appears in the statute.").

Furthermore, because TILA and Regulation Z specifically address the circumstances of an assignee's obligations under the Act, we do not look to the "normal rule" that an assignee assumes the duties of the assigning party. *See, e.g., Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 864 (7th Cir. 1997) ("[e]lementary contract law provides that upon a valid and unqualified assignment the assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor." (internal citation omitted)). Where Congress and the Federal Reserve wished to impose requirements on assignees or subsequent holders, they did so explicitly. *See, e.g.*, 15 U.S.C. § 1641 (liability of assignees under the Act); 12 C.F.R. pt. 226, Supp. I, ¶ 20-1 (holding that a creditor "or subsequent holder" is required to provide certain disclosures under § 226.19 of the Act, relating to residential mortgage and variable-rate transactions). Neither Congress nor the Federal Reserve made the policy choice here to extend the duty to send monthly statements to purchasers of delinquent accounts, and it is not our role to read such a

requirement into the statute. *Cf.*, *Aubert v. American Gen. Fin. Inc.*, 137 F.3d 976, 979 (7th Cir. 1998) ("When Congress wished to add . . . an exclusion from the [FDCPA's] coverage, it is apparent that it knew how to do so.").[5]

Neff's FDCPA claim fares no better. He argues that when Capital One sold his debt to CAMCO, the sale resulted in further collection action against him, when the debt should have been reflected as satisfied, in violation of the FDCPA. That Act, however, applies only to debt collectors, *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000), and only when their conduct is undertaken "in connection with the collection of any debt." 15 U.S.C. § 1629e. *See also* 15 U.S.C. § 1629f ("[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."). Capital One was not a debt collector when it sold Neff's account to CAMCO. 15 U.S.C. § 1692a(6) (defining a "debt collector" as any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."). In selling its asset, Capital One did not directly or indirectly attempt to collect Neff's debt. From the moment it sold Neff's account, it was irrelevant to Capital One whether Neff's account was collected or not. Capital One retained no ownership interest in Neff's debt and CAMCO was not acting as its collection agency. Thus, on

---

[5] For purposes of comparison, the FDCPA, which has a different definition of "creditor," is relevant. Under the FDCPA, a "creditor" is any person who "offers or extends credit creating a debt or *to whom a debt is owed* . . . ." 15 U.S.C. § 1692a(4) (emphasis added); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). Under this definition, Neff and Robb would have a more compelling argument that Capital One and CAMCO are "creditors." Significantly, Congress thus knew how to write a broader definition of "creditor", yet chose not to do so in TILA.

just a facial reading of the statute, Capital One was not a debt collector.

Once the TILA and FDCPA claims were properly dismissed, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state claims. *See, e.g., O'Grady v. Village of Libertyville*, 304 F.3d 719, 725 (7th Cir. 2002).

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

       Teste:

                    _____
                    *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*