Filed March 3, 2006

No. 3-04-0886

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| PRA III, LLC, | ) | Appeal from the Circuit Court of the |
| | ) | Ninth Judicial Circuit, |
| Plaintiff-Appellee, | ) | Knox County, Illinois. |
| | ) | |
| v. | ) | No. 03-LM-289 |
| | ) | |
| CHERYL J. HUND, | ) | Honorable |
| | ) | Stephen C. Mathers, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

_____

JUSTICE McDADE delivered the opinion of the court:

_____

_____

Plaintiff, PRA III, LLC (PRA), is in the business of buying and collecting bad credit card debts. Defendant, Cheryl Hund, had entered into a credit card agreement with Associates National Bank and agreed to pay interest at 20% on unpaid balances. PRA acquired Hund's debt by assignment and sought to recover it, charging the same rate of interest as had its predecessor in interest. PRA filed a complaint against Hund to recover the debt, including interest accumulated at the original rate after PRA acquired the debt. Hund filed a counterclaim alleging that by charging interest on the debt it acquired in excess of 9%, PRA violated the Illinois Interest Act (815 ILCS

205/0.01 et seq. (2004)), the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (2004)), and the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. §1601 et seq. (1988)). The parties filed a stipulated motion to dismiss PRA's first-amended complaint to collect the debt, acknowledging PRA's statutorily-required payment of Hund's costs (735 ILCS 5/5-114 (West 2004)). In that motion, the parties stipulated that Hund's counterclaim remains pending. The trial court granted the parties' motion. Because Hund's counterclaim is based on an independent statutory cause of action (see, *e.g.*, *Stepney v. Outsourcing Solutions, Inc.*, No. 97 C 5288 (N.D. Ill. 1997)), we hold this appeal is not rendered moot by PRA's voluntary dismissal.

PRA filed a motion to dismiss Hund's counterclaim on the grounds it was entitled to collect interest at the rate specified in the charge account agreement between Hund and her credit card issuer. The trial court adopted the reasoning in *Olvera v. Blitt & Gaines*, 03 C 6717 (N.D. Ill. April 26, 2004). There, the court stated that "the Illinois Interest Act regulates the origination of loans and credit agreements by lenders and creditors. It does not deal with the interest an assignee who was not an original party to the credit agreement can charge on a matured debt." *Olvera*, slip op. at ____. The court found that PRA was not an original party to the credit agreement and granted PRA's motion to dismiss Hund's counterclaim. Hund appealed. For the reasons that follow, we affirm.

ANALYSIS

This case requires us to construe several provisions of the Interest Act (815 ILCS 205/0.01 through 9 (West 2004)). "C*onstruction of a statute is a matter of law, which is reviewed*

~2~

*de novo*." *Hines v. Department of Public Aid*, 357 Ill. App. 3d 225, 228 (2005).

In ruling upon a motion to dismiss, a trial court accepts as true all well-pled facts, as well as all reasonable inferences favorable to the party opposing the motion which may be drawn from the facts. Citation. The court does not, however, accept as true mere conclusions of law or fact. Citation. The grant of a motion to dismiss will be reviewed on a *de novo* basis. *Lane v. Anderson*, 345 Ill. App. 3d 256, 263, 802 N.E.2d 1278, 1284 (2004).

On December 9, 2005, the United States Court of Appeals for the Seventh Circuit affirmed the Northern District's decision in *Olvera*, holding that "section 5 of the Illinois Interest Act does not affect the common law rights of assignees." *Olvera v. Blitt & Gaines*, 431 F.3d 285, 289 (7th Cir. 2005). PRA filed a motion to cite the Seventh Circuit's decision as additional authority to this court. We granted that motion, and in response, Hund submitted to this court her petition for rehearing or rehearing *en banc* filed with the Seventh Circuit in *Olvera*. "Illinois courts are generally not bound by federal court decisions construing Illinois statutes that do not involve federal questions. *SI Securities. v. Bank of Edwardsville*, No. 5-04-0651, slip op. at 16 (November 4, 2005). Although we agree with the Seventh Circuit's interpretation of the scope of section 5 of the Interest Act, we note that our decision today is not reliant upon that court's reasoning.

1. Whether PRA, as Assignee of the Original Creditor, May Collect the Same Interest as the Assignor

Hund argues that PRA was not permitted to collect interest in excess of 5% or 9% because Illinois law requires statutory authorization before any entity may collect interest and none of the statutory provisions authorizing the collection of greater interest

apply to PRA. Hund relies on section 5 of the Interest Act 815 ILCS 205 5 West 2002 for her position that no entity may collect interest without express statutory authorization. Section 5 reads as follows

No person or corporation shall directly or indirectly accept or receive, in money, goods, discounts or thing in action, or in any other way, any greater sum or greater value for the loan, forbearance or discount of any money, goods or thing in action, than is expressly authorized by this Act or other laws of this State. 815 ILCS 205 5 West 2002 .

An 'assignment operates to transfer to the assignee all of the assignor s right, title or interest in the thing assigned. Citations. The assignee, by acquiring the same rights as the assignor, stands in the shoes of the assignor.' Community Bank of Greater Peoria v. Carter, 283 Ill. App. 3d 505, 508, 669 N.E.2d 1317, 1319 1996 , quoting In re Estate of Martinek, 140 Ill. App. 3d 621, 629, 488 N.E.2d 1332, 1337 1986 . Despite this well-established rule, Hund argues the phrase n o person or corporation in section 5 of the Interest Act should be given its plain and literal meaning to include assignees. PRA would then be prohibited from collecting interest unless expressly authorized by the Interest Act or other laws of this State.

Sections 2 and 4 of the Interest Act address what interest an entity may charge. Those sections read, in pertinent part, as follows

Creditors shall be allowed to receive interest at the rate of five 5 per centum per annum for all moneys after they become due . 815 ILCS 205 2 West 2002 .

In all written contracts it shall be lawful for the parties to stipulate or agree that 9 per annum, or any less sum of interest, shall be taken and paid upon every 100 of

4

money loaned or in any manner due and owing from any person to any other person or corporation in this state, and after that rate for a greater or less sum, or for a longer or shorter time, except as herein provided. Emphasis added. 815 ILCS 250 4 1 West 2002 .

Based on the foregoing, absent an agreement between the parties, Illinois law permits creditors to collect 5 interest on unpaid debts. Parties may contract for up to 9 interest without restriction or for a greater sum of interest than 9 subject to certain restrictions found in section 4 of the Interest Act. Section 4 states generally that t he maximum rate of interest that may lawfully be contracted for is determined by the law applicable thereto at the time the contract is made. 815 ILCS 205 4 1 West 2002 . Section 4.2 of the Interest Act goes on to state as follows

On a revolving credit it is lawful for any bank or a lender licensed under the Consumer Finance Act, the Consumer Installment Loan Act or the Sales Finance Agency Act to receive or contract to receive and collect interest in any amount or at any rate agreed upon by the parties to the revolving credit arrangement. 815 ILCS 205 4.2 West 2002 .

But Hund argues PRA may not take advantage of section 4.2 because it is not a lender. PRA responds that the Interest Act does not apply to it at all for the same reason it is not a lender. PRA cites, inter alia, Computer Sales Corp. v. Rousonelos Farms, Inc., 190 Ill. App. 3d 388, 392, 546 N.E.2d 761, 763 1989 , which stated that the usury statute quoting section 4 of the Interest Act applies only to those contracts which in substance involve a loan of money or forbearance to collect money due. Emphasis added. Rousonelos, as did the other cases PRA cited in support of this proposition, distinguished between credit purchases of property, goods, or services, and credit cards which may be used to make loans or advances in lender–debtor transactions. See,

e.g., *Johnson v. Sears Roebuck Co.*, 14 Ill. App. 3d 838, 850, 303 N.E.2d 627, 637 1973 . Those cases did not, however, address assignees of lenders that issue credit cards.

According to Hund, the argument that the Interest Act does not apply to assignees such as PRA is belied by the legislature's grant of limited authority to assignees to collect interest above 9 . The first exception for assignees, according to Hund, is found in section 2 listed above. The second is in section 4.2 of the Interest Act, which grants sales finance agencies the authority to receive and collect interest in any amount. *See* 815 ILCS 205 4.2 West 2002 . Hund argues that a sales finance agency is, by definition, an assignee. Section 2 of the Sales Finance Agency Act 205 ILCS 660 2 West 2002 defines a sales finance agency as a person engaged in this State, in whole or in part, in the business of purchasing retail installment contracts, retail charge agreements or the outstanding balances under such contracts or agreements entered into in this State. Thus, Hund concludes, because the legislature specified the circumstances under which an assignee may collect interest above the statutory rate, under the doctrine of *expressio unis est exclusio alterius*, it necessarily excluded all others.

Hund also cites *Neff v. Capital Acquisitions Management Co.*, 352 F.3d 1118, 1120 7th Cir. 2003 , wherein the plaintiffs alleged that the purchaser of their delinquent credit card accounts violated the Truth in Lending Act 15 U.S.C. §1601 2000 by not providing monthly statements. The court found that n either Congress nor the Federal Reserve made the policy choice here to extend the duty to send monthly statements to purchasers of delinquent accounts. *Neff*, 352 F.3d at 1121. The court refused to read such a requirement into the Truth in Lending Act because, where the statute in question specifically address es the circumstances of an assignee s obligations , we do not look to the 'normal rule' that an assignee assumes the duties of the assigning party. *Neff*, 352 F.3d at 1121. Here, Hund argues that since the Interest Act specifically addresses the circumstances of an

assignee's right to collect interest, this court should not look to the normal rule that assignees stand in the shoes of the assignor and, in this case, would be permitted to charge the same rate of interest as the assignor.

PRA argues that, even if the Interest Act does apply to it, under section 5 it was entitled to collect interest at the rate provided for in the original credit card agreement. Hund does not argue that PRA attempted to collect a greater rate of interest than provided in her original credit card agreement. PRA relies on the language in section 5 that states no entity may collect interest unless authorized by other laws of this State. See 815 ILCS 205 5 West 2002. PRA contends that the common law governing assignments constitutes other laws of this State and that under the common law of assignments, the assignee does stand in the shoes of the assignor with respect to the assigned rights. Hund disputes that claim, asserting that section 5's reference to other laws of this State does not include the common law of assignments. Hund claims the history of section 5 shows that the reference to 'other laws of this State' replaced a list of statutory sections which was getting excessively long, and has nothing to do with the common law regarding assignees. In support of her position, Hund also argues that if the common law of assignments is incorporated into section 5, the limited authority granted assignees to collect interest found in section 2 of the Interest Act 815 ILCS 205 2 West 2002 would be rendered inoperative. Section 2 of the Interest Act reads, in pertinent part, as follows

In the absence of an agreement between the creditor and debtor governing interes charges, upon 30 days written notice to the debtor, an assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of a creditor. Emphasis added. 815 ILCS 205 2 West 2002.

Hund admits that collection agencies may take assignments of debts and sue in their own name, but asserts that PRA was not charging interest on behalf of anyone, so this section does not help it.

We hold that the Interest Act applies to assignees of debt that wish to continue to collect interest on those debts. Hund did not contract with PRA for the payment of interest on the debt it acquired. Illinois courts have long held that interest is not recoverable unless contracted for or authorized by statute. Illinois State Toll Highway Authority v. Heritage Standard Bank Trust Co., 250 Ill. App. 3d 665, 687, 619 N.E.2d 1321, 1335 1993 , citing Department of Transportation v. New Century Engineering Development Corp., 97 Ill. 2d 343, 352, 454 N.E.2d 635, 640 1983 . See also Blakeslee's Storage Warehouses, Inc. v. City of Chicago, 369 Ill. 480, 483, 17 N.E.2d 1, 3 1938 . Accordingly, if the Interest Act contained a limitation on the amount of interest an assignee could charge, that limitation would be enforceable against an assignee that was not a lender as defined in the statute.

However, any limitation upon an assignee as it relates to charging interest on a matured debt at the rate it would be permitted to charge if it had originated the credit agreement would not have to be separately stated for assignees. This is true because if the phrase other laws of this State in section 5 of the Interest Act does not include the common law of assignments, then, absent an agreement between the debtor and the assignee, the assignee would be limited to 5 interest. Therefore, we need not determine whether, specifically, section 4.2 applies to PRA.

PRA does not contend that it may collect the interest agreed upon in the revolving credit arrangement in its own right. No agreement as to a revolving credit arrangement or an interest rate exists between PRA and Hund, and therefore section 4.2 is inapplicable to this situation. Similarly, section 4 of the Interest Act is inapplicable. That section also addresses what rate of interest the parties may agree upon. Again, PRA and Hund do not have a written agreement as to the debt in question. The only question remaining, therefore, is, if the phrase other laws of this State does not include the law of assignments, does section 5 of the Interest Act prohibit PRA from collecting the interest Hund agreed

to on the debt PRA acquired?

Hund's argument that the phrase "other laws of this State" does not include the common law of assignments is unpersuasive. "'State law' includes common law as well as statutes and regulations." *Farner v. Brunswick Corp.*, 239 Ill. App. 3d 885, 891, 607 N.E.2d 562, 567 (1992) (rejecting claim, for purposes of preemption of state recreational boat safety regulations by federal act, that "a common law claim is not the equivalent of a law or regulation", citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 522, 120 L. Ed. 2d 407, 426, 112 S. Ct. 2608, 2620 (1992) ("We have recognized the phrase 'state law' to include common law as well as statutes and regulations. Indeed just last Term, the Court stated that the phrase ' all other law, including State and municipal law ' does not admit of 'a distinction . . . between positive enactments and common-law rules of liability'"). Nor is Hund's argument that finding assignees may charge the same interest as their assignors renders section 2 of the Interest Act inoperative persuasive. The purpose of section 2 is not to vest an assignee with "limited authority" to collect interest as Hund argues. The right of the assignee to collect interest derives from the assignment from the creditor. In addition to setting the rate of interest, section 2 does, however, create a requirement for 30 days' written notice before an assignee may exercise the right obtained by a valid assignment.

Moreover, the legislature recognized the assignability of a creditor's rights in section 2 of the Interest Act. There, creditors' assignees and agents are granted express authority to charge and collect the same interest afforded creditors in the Act. "An assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of a creditor." 815 ILCS 205/2 (West 2002). Hund argues PRA was not collecting interest on behalf of the credit card issuer, but that conclusion is (a) not relevant to the question of whether the common law of assignments is part of the Interest Act, and (b) called into question by the legislature's use of "assignee" and "agent" in section 2.

If, as Hund suggests, this section is only applicable when the third party is collecting interest for the direct benefit of the original lender, then "agent" would have been sufficient. However, the legislature chose to include an "assignee" as a party that may charge and collect the interest provided in the Interest Act. The legislature is presumed to know what an assignment is and that, as a result, the assignor would extinguish its right to the benefits of the loan agreement, including the interest. Thus, it appears that the phrase "on behalf of a creditor" in section 2 is mere surplusage.

Finally, Hund characterizes the trial court's holding as creating an exception to section 5 of the Interest Act for assignees and argues that its reasons for creating such an exception are untenable. The court did not, however, find that section 5 contained an exception for assignees. It found that the Interest Act simply did not apply in this case. Nonetheless, Hund argues that such an "exception" is inconsistent with the text and history of section 5 and is in derogation of the public policy of this state. Hund's textual argument is that stated above i.e., section 5 contains a broad proscription against the collection of interest without explicit statutory authorization, no such authorization applies to PRA, and PRA may not charge the same interest as its assignor because section 5 does not incorporate and in fact defeats the common law of assignments. For the reasons stated above, we disagree.

Hund also claims that the court's ruling usurps the legislature's prohibition on the transfer or assignment of license rights. Hund's argument in this regard is based on the requirement that a sales finance agency be licensed and that those licenses are expressly made nontransferable. However, while Hund argued that a sales finance agency is a *type* of assignee governed by the Interest Act, her argument tacitly admits that it is not the *only* assignee governed by the Interest Act. Hund does not argue, nor do we find, that any language in the Interest Act requires the assignees referred to in section 2 to be licensed. The Interest Act, therefore, specifically provides that an unlicensed assignee of a creditor may charge interest as provided in the Act. Accordingly, Hund's argument that the court's ruling results in an impermissible

˘10˘

transfer of the rights of a licensee to an unregulated entity in violation of public policy must also fail.

We hold that PRA was entitled to seek interest on Hund's debt in the same amount as the original creditor from whom PRA acquired the debt.

2. Whether PRA Violated the Fair Debt Collection Practices Act (FDCPA) or the Illinois Consumer Fraud Act by Attempting to Collect the Same Interest Rate as the Original Issuer of Hund's Credit Card

Hund argues that a debt collector who attempts to collect usurious interest violates the FDCPA. Specifically, Hund alleges PRA violated section 1692f(1) of the FDCPA (15 U.S.C. §1692f(1) (1988)), which reads as follows:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

Additionally, Hund charges PRA with violating section 1692e(2) of the FDCPA (15 U.S.C. §1692e(2) (1988)) which reads as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of-- (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be

ˇ11ˇ

*lawfully* received by any debt collector for the collection of a debt.

The Federal Trade Commission published staff commentary on the FDCPA. Relevant to this appeal, the commentary stated as follows

A debt collector may attempt to collect a fee or charge in addition to the debt if either a sic the charge is expressly provided for in the contract creating the debt and the charge is not prohibited by state law, or B the contract is silent but the charge is otherwise expressly permitted by state law. Conversely, a debt collector may not collect an additional amount if either A state law expressly prohibits collection of the amount or B the contract does not provide for collection of the amount and state law is silent. *Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 408 n.32, quoting 53 Fed. Reg. 50,097, 50,108 eff. March 20, 1978 .

PRA does not allege the existence of a contract between it and Hund for the interest it sought. However, as previously discussed, under Illinois law, PRA is permitted to charge the same interest as its assignor. Therefore, under the staff commentary to the FDCPA, PRA may collect the interest.

Hund also argues that she is entitled to relief based on PRA's alleged systematic assessment, collection, and reporting to credit bureaus of excess interest. Hund states that PRA's action is contrary to public policy and that, accordingly, she is entitled to relief under the Consumer Fraud Act. In *Robinson v. Toyota Motor Credit Corp.,* 201 Ill. 2d 403, 417-18, 775 N.E.2d 951, 960 2002 , the supreme court held that recovery may be had under the Consumer Fraud Act for unfair conduct. Whether the conduct offends public policy is one of three factors cited with approval in *Federal Trade Comm n v. Sperry Hutchinson Co.,* 405 U.S. 233, 244 n. 5, 31 L. Ed. 2d 170, 179 n. 5, 92 S. Ct. 898, 905 n. 5 1972 , as considered by the Federal Trade Commission in measuring unfairness. *Robinson,* 201 Ill. 2d at 417-18, 775

N.E.2d at 960-61. The *Robinson* court held that ' a ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. ' *Robinson*, 2011 Ill. 2d at 418, 775 N.E.2d at 961, quoting *Cheshire Mortgage Services, Inc. v. Montes*, 223 Conn. 80, 106, 612 A. 2d 1130, 1143-44 (1992). Hund makes no argument concerning the remaining two *Sperry* factors nor does she argue the "degree" to which PRA's conduct violates public policy. Regardless, because PRA did not collect excess interest, it did not violate public policy as stated in Illinois law, and, consequently, this argument must fail.

## CONCLUSION

We find that (1) the Interest Act does apply to assignees of debt that wish to continue to collect interest on those debts (2) because no agreement exists between PRA III and Hund regarding this debt or the interest to be charged, neither section 4 nor section 4.2 is applicable in this case and (3) the phrase "other laws of this State" in section 5 includes the Illinois common law of assignments. We also find no violation of the Fair Debt Collection Practices Act or the Consumer Fraud Act occurred because of PRA III's attempt to collect interest at the same rate as its assignor, Associates National Bank. Accordingly, the trial court's order granting PRA's motion to dismiss Hund's counterclaim is affirmed.

Affirmed.

SCHMIDT, P.J. and O'BRIEN, J., concur.