Filed 5/25/18 (unmodified opn. attached)
Order modifying opinion filed 5/22/18

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PROFESSIONAL COLLECTION CONSULTANTS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ROBERT M. LUJAN,<br><br>    Defendant and Respondent. | A147922, A148925<br><br>(San Francisco City and County Super. Ct. No. CGC-12-517685)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**

The opinion filed on May 22, 2018, is modified as follows:

On pages 2 and 3 counsel Clark **Galen's** name is misspelled and is corrected to read:  Clark **Garen**.

On page 19 of the counsel sheet, change **Bacon** R. Roulston to the corrected spelling:  **Raeon** R. Roulston.

There is no change in judgment.

Dated: _____          _____

                                                                    Richman, Acting P.J.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III.

Trial Judge:                          Hon. Ernest H. Goldsmith

Trial Court:                          San Francisco County Superior Court

Attorneys for Appellant:              Law Offices of Clark Garen
                                      Clark Garen
                                      Rachel Zwernemann
                                      Brian C. Nelson

Attorneys for Respondent:             Law Office of Nathaniel Bigger
                                      Nathaniel Bigger

                                      Consumer Law Center, Inc.
                                      Fred W. Schwinn
                                      Raeon R. Roulston
                                      Matthew C. Salmonsen

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PROFESSIONAL COLLECTION CONSULTANTS,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>ROBERT M. LUJAN,<br><br>　　　Defendant and Respondent. | A147922, A148925<br><br>(San Francisco City and County<br>Super. Ct. No. CGC-12-517685) |

　　　Professional Collection Consultants (PCC) filed this action to collect credit card debt that Lujan incurred.  The parties agree that if Delaware's three-year statute of limitations applies the action is time-barred, but that if California's four-year statute applies the case is timely filed.  The trial court applied the Delaware statute, granting summary judgment on statute of limitations grounds to defendant Robert Lujan.  On this disposition of PCC's complaint we affirm.

　　　Lujan filed a cross-complaint alleging that the efforts of PCC and others to collect the time-barred debt violated federal and state consumer protection laws.  In the unpublished portion of our opinion, we affirm in part and reverse in part the trial court's grant of summary judgment on Lujan's cross-complaint and we affirm the trial court's decision not to award Lujan statutory damages.  We also affirm the trial court's postjudgment orders awarding attorney's fees and costs to Lujan and denying fees and costs to the cross-defendants.

**FACTUAL AND PROCEDURAL BACKGROUND**

_____

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III.

Lujan is a San Francisco resident, and has been for more than four decades. He had a credit card with Chase Bank USA, N.A. (Chase), which he used in San Francisco for personal and household expenses.

Chase is a Delaware corporation, or at least Lujan so asserts.[1] The credit card account Lujan maintained with Chase was governed by a cardmember agreement with a choice-of-law provision stating that "federal law and the law of Delaware" govern the agreement. The same agreement also had a provision for attorney's fees. Chase informed cardmembers, "if you are in default because you have failed to pay us, you will pay our collection costs, attorney's fees, court costs, and all other expenses of enforcing our rights under this agreement."

When the last activity on Lujan's credit card account left an unpaid balance, sometime in the second half of 2007, Chase assigned away its claim against Lujan. Initially, Chase assigned the claim to Turtle Creek Assets, Ltd., which assigned it on to Wireless Receivables Acquisition Group (Wireless), which assigned it in turn to PCC. On June 21, 2011, PCC filed this case in the Contra Costa County Superior Court, alleging a cause of action for common counts. The complaint alleges both an open book account for money due and an account stated in writing, and specifies the amount owed as $8,831.90. An attorney for the Law Offices of Clark Galen (salaried employees of PCC) filed the case, and PCC Vice President Todd Shields verified the complaint.

After the case was transferred to San Francisco Superior Court, Lujan answered and cross-complained against PCC and Shields. His cross-complaint seeks damages for alleged violations of federal and state statutes: the Fair Debt Collection Practices Act (FDCPA) (15 U.S. C. § 1692 et seq.), and the Rosenthal Fair Debt Collection Practices

---

[1] The parties' briefs represent that this fact and others are uncontested, but they ignore, wholesale, the requirement in our rules that a brief "[s]upport any reference to a matter in the record by a citation to the volume and page number . . . where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) This rule admits to no exception for facts that are uncontested.

Act (RFDCPA) (Civ. Code, § 1788 et seq.). Subsequently, Lujan added Wireless and Galen as cross-defendants.

The parties filed competing motions for summary judgment on both the complaint and cross-complaint. On the complaint, the trial court granted Lujan's motion for summary judgment. It reasoned that PCC's action was to recover a debt incurred under an agreement with a choice-of-law provision, so it applied Delaware's three-year statute of limitations and found PCC's claims time-barred. On the cross-complaint, the trial court granted summary judgment to cross-defendants Wireless, Shields, and Galen, finding that none of them meets the statutory definition of a debt collector. But PCC *is* a debt collector and filed this case after the statute of limitations had run, so the trial court concluded PCC violated both the FDCPA and the RFDCPA and granted Lujan summary judgment against cross-defendant PCC. Lujan's summary judgment motion sought from each cross-defendant the statutory maximum of $1,000 for violating each of two different provisions of the FDCPA and the RFDCPA, but the court's order is silent on this request for statutory damages.

The trial court signed a final judgment, which it entered on March 1, 2016. Before signing Lujan's proposed judgment, the trial court crossed out the sentence that would have awarded Lujan statutory damages, leaving him with only "attorney fees and costs of suit as provided by the respective statutes." On July 12, 2016, the trial court issued two postjudgment orders addressing attorney's fees and costs. One order awarded Lujan $140,550.51, representing a lodestar slightly reduced from his request, enhanced by a multiplier of 1.5. The other order denied fees to Wireless, Garen, and Shields, in part because the cross-complaint was not an action " 'on a contract' " within the meaning of Civil Code section 1717 (section 1717).

PCC filed timely notices of appeal on both the underlying judgment in the collection action (case No. A147922) and the order on attorney's fees and costs (case No. A148925). Lujan timely cross-appealed the summary judgment in favor of Wireless and the individual cross-defendants, and the trial court's failure to award statutory damages and to find a second violation of the FDCPA and the RFDCPA based on improper venue.

3

The cross-defendants who won summary judgment appealed the denial of their attorney's fees motion (case No. A148925).

## DISCUSSION

We review de novo the trial court's entry of summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) A party moving for summary judgment bears the initial burden of proof, as well as "the burden of persuasion that there is no triable issue of material fact and that [it is] entitled to judgment as a matter of law." (*Id*. at p. 850.) When a defendant moves for summary judgment, if his moving papers make out a prima facie case entitling him to judgment, "the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact." (*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945.) Likewise, if the plaintiff meets its initial burden, the defendant must show a triable issue of material fact to defeat summary judgment. (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958 (*Lauron*).)

We address first the trial court's grant of summary judgment in Lujan's favor on the complaint, then summary judgment for and against Lujan on the cross-complaint, and finally the trial court's orders granting attorney's fees and costs to Lujan and denying them to Wireless and the individual cross-defendants.

## I.

In moving for summary judgment on PCC's complaint, Lujan makes a prima facie case that he was entitled to summary judgment on statute of limitations grounds. He points to Chase's cardmember agreement and argues that his use of the credit card constituted acceptance of the terms of that agreement. (See *Anastas v. American Sav. Bank (In re Anastas)* (9th Cir. 1996) 94 F.3d 1280, 1285.) He points to the Delaware choice-of-law provision in the cardmember agreement and to the three-year limitations period of 10 Delaware Code section 8106, a code section he plausibly asserts applies to actions for breach of contract, open book account, and account stated in writing. And Lujan applies California choice-of-law principles to argue that the election of Delaware law should be enforced: PCC's claims fall within the scope of the contract's choice-of-

4

law provision; there is a reasonable basis for the parties to have chosen the law of the state where Chase is incorporated; and no fundamental policy of California is offended by applying Delaware's somewhat shorter statute of limitations. (See *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 916-917.)

In response to Lujan's prima facie case, PCC points to no new evidence but makes numerous arguments. PCC's first argument is that the cardmember agreement is irrelevant because an action based on an open book account or an account stated in writing is completely independent of, and unrelated to, the underlying contract, rendering superfluous the contract's choice-of-law provision. If one were to disregard the cardmember agreement, PCC's cause of action would be governed by California's four-year statute of limitations for breach of a written contract, including an open book account or account stated in writing (Code Civ. Proc., § 337), but we cannot disregard the cardmember agreement here. PCC's argument misunderstands the common counts PCC has pleaded, and mistakenly elevates form in pleading over substance.

The elements of a cause of action for breach of contract are well known. A plaintiff must establish: the existence of a contract, plaintiff's performance (or excuse for non-performance), defendant's breach, and resulting damages. (*Lauron*, *supra*, 8 Cal.App.5th at p. 968.) Less well-known are the common counts. "A common count is not a specific cause of action . . .; rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness . . . ." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394.) PCC pleads two common counts.

"A 'book account' is 'a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith . . . .' " (*Lauron*, *supra*, 8 Cal.App.5th at p. 969.) The creditor must keep these records in the regular course of its business and "in a reasonably permanent form," such as a book or card file. (Code Civ. Proc., § 337a.) "A book account is 'open' where a balance remains due on the account." (*Lauron*, at p. 969.)

5

"An account stated is 'an agreement, based on prior transactions between the parties, that the items of an account are true and that the balance struck is due and owing.' " (*Lauron*, *supra*, 8 Cal.App.5th at p. 968.) "When an account stated is ' "assented to, either expressly or impliedly, it becomes a new contract." ' . . . Accordingly, an action on an account stated is not based on the parties' original transactions, but on the new contract under which the parties have agreed to the balance due." (*Ibid*.)

The trial court rejected PCC's request to apply California's four-year statute of limitations because the court concluded that the action was one "to recover a debt incurred under the credit agreement," which had a Delaware choice-of-law provision. Going further, the court explained, "[m]onies due under an express written contract, such as the cardmember agreement at issue herein, 'cannot, in the absence of a contrary agreement between the parties, be treated as items under an open book account so as to allow the creditor to evade or extend the statutory limitations period.' " (See *Tsemetzin v. Coast Federal Savings and Loan Assn.* (1997) 57 Cal.App.4th 1334, 1343.) We need not go this far and express no view as to whether, under different circumstances, credit card debt can be collected using common counts. It is enough to note that in this case, as the trial court observed at the outset, the gravamen of the complaint is Lujan's failure to pay monies owed Chase for his use of the card under the cardmember agreement. (*Lauron*, *supra*, 8 Cal.App.5th at p. 971.)

"The statute of limitations that applies to an action is governed by the gravamen of the complaint, not the cause of action pled." (*City of Vista v. Robert Thomas Securities, Inc.* (2000) 84 Cal.App.4th 882, 889; see also *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 412.) Thus, if a complaint alleges acts of actual and constructive fraud but frames its cause of action as one for breach of fiduciary duty, the statute of limitations for fraud applies. (*Ibid.*) Similarly, where the gravamen of a complaint is a liability created by statute, a plaintiff cannot extend the limitations period by framing his case as a breach of contract instead. (*Giffin v. United Transportation Union* (1987) 190 Cal.App.3d 1359, 1362.) So, here, because the gravamen of PCC's

6

complaint is that Lujan failed to pay Chase money it owed under the cardmember agreement, PCC cannot extend the three-year statute of limitations that applies for such a breach of contract claim by pleading common counts instead.

PCC fails to establish that the trial court erred in identifying the gravamen of this complaint as an action to collect debt incurred under the cardmember agreement. Looking first to the complaint itself, because it relies on a simplified form of pleading, the complaint contains no facts to support the allegations of an open book account and an account stated in writing except that Chase "was the original creditor for the claim upon which this action is based." Of course, the cardmember agreement is what established the terms under which Chase became Lujan's creditor, and the cardmember agreement is the only evidence of a creditor-debtor relationship that PCC cites in its briefs. *If* Lujan maintained an open book account with Chase, that account was one that arose out of the cardmember agreement. (See *Lauron*, *supra*, 8 Cal.App.5th at p. 969 [a book account is a statement of transactions " 'arising out of a contract' "].) *If* Lujan and Chase assented in writing to the amount of his indebtedness, as is required for an account stated in writing (*id*. at p. 968), perhaps the cardmember agreement forms a portion of that writing. Certainly PCC presents no *other* evidence of a written agreement between the parties.[2] In short, although PCC does not expressly frame its case as a breach of the cardmember agreement, it produces no evidence to dissuade us that breach of this agreement is indeed the gravamen of its complaint. (See *id*. at p. 971.)

None of the cases on which PCC relies requires a contrary result. *Zinn v. Fred R. Bright Co.* (1969) 271 Cal.App.2d 597, 604 was an action for an account stated in writing where the writing was an uncashed check that the debtor-employer gave the creditor-employee, representing the amount owed the employee as a profit-sharing bonus. (*Id*. at p. 599.) That the court in *Zinn* applied the statute of limitations for an account stated in writing is unsurprising, since the evidence was that this was the gravamen of the

---

[2] PCC references no other written agreement in its briefs, and " '[w]e have no duty to search the record for evidence . . . .' " (*Lauron*, *supra*, 8 Cal.App.5th at p. 974.)

7

creditor's case. (*Id*. at p. 602.) Nothing about this result compels us to apply California's statute of limitations in a case where the only writing in evidence is a contract that invokes Delaware law. Nor is *Boon v. Professional Collection Consultants* (2014) 978 F.Supp.2d 1163 persuasive authority on this point, as the case contains little analysis on the statute of limitations and involves a debtor who submitted no relevant evidence, but attempted in vain to rely on his pleadings to oppose summary judgment. (*Id*. at p. 1168.)

PCC's second argument is that if this action is governed by Delaware law, then Delaware law tolls the statute of limitations indefinitely while defendant Lujan is absent from the state of Delaware. Delaware's non-resident tolling statute provides: "If at the time when a cause of action accrues against any person, such person is out of the State, the action may be commenced, within the time limited therefor in this chapter, after such person comes into the State in such manner that by reasonable diligence, such person may be served with process. . . ." (Del. Code Ann. tit. 10, § 8117.) "Numerous courts outside of Delaware have declined to apply 10 Delaware Code section 8117 where," as here, "it would result in indefinite tolling." (*Lauron*, *supra*, 8 Cal.App.5th at p. 974.) We follow *Lauron* in declining to apply this tolling provision. (*Ibid*.) Because Lujan is not susceptible to suit in Delaware, applying the tolling provision would produce the absurd result of abolishing the statute of limitations defense entirely, which is surely inconsistent with a fundamental policy of California law. Because Delaware's tolling provision is not inherent in, or inseparable from, its statute of limitations (see Del. Code Ann. tit. 10, § 8106 [with exceptions not including § 8117]), our refusal to adopt Delaware's non-resident tolling statute does not prevent us from enforcing Delaware's statute of limitations. *Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co.* (Del. 2005) 866 A.2d 1, 18 is not inconsistent with this result. It stands for the proposition that if Lujan were to move to Delaware and PCC to pursue a collection action there in the future, then Delaware courts would apply the non-resident tolling statute and might still find the action timely. That result does not require an out-of-state court to apply Delaware's non-resident tolling statute to persons who have never lived in Delaware.

PCC's third argument is that because the cardmember agreement was not signed by anyone, it cannot act to waive the statute of limitations. In support of this argument, PCC cites California's Code of Civil Procedure section 360.5, which prevents parties from waiving the statute of limitations except in a signed document. But Lujan does not argue, and the trial court does not find, that Lujan or anyone else has waived the right to assert the statute of limitations. Rather, the trial court gives full effect to a statute of limitations defense in granting Lujan summary judgment. (See *Lauron*, *supra*, 8 Cal.App.5th at p. 973.)

PCC's fourth argument is that none of the terms of the cardmember agreement, other than Lujan's promise to pay, can be enforced because Lujan did not sign the cardmember agreement. For support, PCC relies on a single case, which is silent on the validity of an unsigned cardmember agreement. PCC's case merely holds that "it is the *use* of the credit card, and not the *issuance*, that creates an enforceable contract." (*Bank of America v. Jarczyk* (W.D.N.Y. 2001) 268 B.R. 17, 22.) This is entirely consistent with Lujan's theory of how his contract with Chase was formed, and with enforcing the terms of the cardmember agreement. (*Id.* at p. 24.)

PCC's fifth argument, in the alternative, is that because Chase is a federally charged bank we should apply the four-year statute of limitations that federal law establishes for civil actions arising out of acts of Congress, rather than Delaware law. But "PCC's breach of contract action does not arise under an Act of Congress; it is a state law claim. Accordingly state law," specifically Delaware law, governs. (*Lauron*, *supra*, 8 Cal.App.5th at p. 972.)

Finally, PCC argues that if its claim against Lujan is time-barred but Lujan's cross-complaint results in a judgment against PCC, then PCC should be entitled to offset an award against it by the amount Lujan owes on the Chase debt. PCC is mistaken. It relies on Code of Civil Procedure section 431.70, but that statute applies only "[w]here cross-demands for money have existed between persons at any point in *time when neither demand was barred by the statute of limitations*, and an action is thereafter commenced by one such person . . . ." (Code Civ. Proc., § 431.70, italics added.) The purpose of the

9

statute is to allow offset of competing claims in a circumstance where one party "allow[s] the statute of limitations to run on its claim, reasoning that the two claims have canceled one another out," only later to confront the opposing party's claim once its own is time-barred. (*Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 195.) Here, Lujan's cross-complaint alleges PCC's unlawful attempt to collect on the time-barred debt, claims that by definition did not exist at a time before PCC's claim was barred by the statute of limitations. Because Lujan's claims only arose after the statute of limitations on Chase or PCC's claim had run, Code of Civil Procedure section 431.70 has no relevance here.

In sum, PCC fails to raise a triable issue of material fact as to which statute of limitations applies, so the trial court appropriately granted Lujan summary judgment.

## II.

We turn now to Lujan's cross-complaint against PCC and others. Lujan argues three points in his cross-appeal, which we consider in turn.

## A.

First, Lujan argues that the trial court erred in granting Wireless and the individual cross-defendants summary judgment on the grounds that they were not debt collectors. The FDCPA defines a "debt collector" as a person engaged in a "business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts . . . asserted to be owed or due another. . . ." (15 U.S.C. § 1692a(6).) The definition under state law is similar, except that the RFDCPA exempts attorneys from its reach. (Civ. Code, § 1788.2, subd. (c).)

We reject Lujan's argument as to Wireless, as Lujan has not established that Wireless was anything more than an intermediate assignee and assignor of Lujan's (and others') delinquent accounts. The trial court reached the same conclusion, relying on *Neff v. Capital Acquisitions & Mgmt. Co.* (7th Cir. 2003) 352 F.3d 1118. Lujan is correct that *Neff* is distinguishable, in that it involved a creditor collecting its own debt, rather than a debt collector seeking to collect the debts of another. But just because Wireless is not a creditor seeking to collect its own debt, does not make Wireless a "debt collector"

10

as the statute defines that term. "An assignee may be deemed a 'debt collector' if the obligation is already in default when it is assigned" (*Pollice v. National Tax Funding, L.P.* (3d Cir. 2000) 225 F.3d 379, 403), but only if the assignee is in the business of collecting debt. (See *id*. at p. 404 [principal purpose of assignee's business is collection of debts].) Here, Lujan presents no evidence that Wireless did anything with the debts other than assign them further to PCC. He presents no evidence that Wireless "regularly collects or attempts to collect" on the debt of others (15 U.S.C. § 1692a(6)), and no legal authority for the proposition that one who does no more than buy and sell debt is a debt collector under the FDCPA. Lujan therefore fails on this record to establish that the trial court erred in granting Wireless summary judgment.

As to the individual defendants, we agree with Lujan that the trial court erred in granting summary judgment to Shields and Garen on the grounds they are not debt collectors. Shields is either president or vice-president of PCC, which is a debt collector, from which facts one might reasonably infer that he, too, is regularly engaged in collecting debts owed to another. The record establishes that he was involved in this case as the person verifying the complaint whose filing violated the FDCPA and the RFDCPA, a fact the trial court appears to have overlooked in concluding there was no evidence of Shields's involvement in collecting Lujan's debt. While the evidence is not sufficient for us to grant summary judgment against Shields, we reverse the summary judgment in his favor because of triable issues of material fact as to whether he is a debt collector and liable for the violations of the FDCPA and the RFDCPA.[3] Similarly with regard to Garen, the complaint was filed by an attorney from the Law Offices of Clark Garen, which attorneys are salaried employees of PCC, and Garen himself has long appeared as counsel of record in this collection action, so there is a triable issue of material fact as to whether Garen, like his employer, is a debt collector liable to Lujan for violation of the FDCPA. Under federal law, the fact that he is an attorney collecting debt

---

[3] We do not mean to suggest that Lujan's cross-complaint against either of the individual cross-defendants should actually proceed to trial, only that summary judgment on the specific grounds urged in this motion is not proper.

not purchased in his own name does not immunize Garen from liability. (See *McCullough v. Johnson, Rodenburg & Lauinger, LLC* (9th Cir. 2011) 637 F.3d 939, 948.)

**B.**

Lujan's second argument is that the trial court erred in failing to award him statutory damages under both the FDCPA and the RFDCPA. Although he makes no claim for actual damages, Lujan claims he is entitled to statutory damages of $1,000 per cross-defendant for each violation of either statute. Lujan is mistaken. Statutory damages are entirely discretionary under the FDCPA, which provides for "such additional damages as the court *may allow*, but not exceeding $1,000." (15 U.S.C. § 1692k(a)(2)(A), italics added.) We review the trial court's failure to award statutory damages under the FDCPA for an abuse of discretion (*Lester E. Cox Med. Ctr. v. Huntsman* (8th Cir. 2005) 408 F.3d 989, 993),[4] and find none. There was no binding authority addressing the legal issue addressed in the first part of this opinion at the time that PCC filed its collection action against Lujan, and the trial court could reasonably have concluded that under these circumstances its award of attorney's fees and costs to Lujan sufficed to compensate him without awarding any additional damages.

Proof of a violation of the RFDCPA requires an award of statutory damages between $100 and $1,000, but only if the court determines that a debt collector "willfully and knowingly" violated the RFDCPA. (Civ. Code, § 1788.30, subd. (b).) In light of the unsettled state of the law when PCC filed this action, the evidence that this action would have been timely under a four-year statute of limitations is substantial evidence

---

[4] The standard of review does not change simply because the trial court failed to record in its written order that it was exercising its discretion, and made no express factual findings. Had Lujan been troubled by this silence when he saw the court's tentative decision, he could have raised the issue at oral argument. On appeal, we "affirm even when the record is *silent* as to the trial judge's underlying grounds or reasons in support of the appealed judgment or order . . . so long as its decision is correct on any ground." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2017) ¶ 8:217, p. 8-169.)

12

supporting the trial court's implied determination that PCC's violation was not willful and knowing.

To the extent that section 1788.17 of the Civil Code also subjects debt collectors to remedies provided for under federal law (specifically, under 15 U.S.C. § 1692k), those remedies are discretionary and the trial court did not abuse its discretion in failing to award damages under this section.

## C.

Lujan's third argument is that PCC violated the FDCPA by filing its debt collection action in Contra Costa County, rather than in San Francisco, and that the trial court should have so found. Lujan included this argument in his motion for summary judgment as one of the grounds for finding a violation of the FDCPA and the RFDCPA, and when the court's tentative ruling did not address the issue counsel raised that point at oral argument. However, the trial court's order granting summary judgment remains silent on the point. When Lujan's cross-complaint against Shields and Garen returns on remand to the trial court, the issue remains open. As to PCC, however, the trial court has awarded summary judgment on Lujan's cross-complaint, and we affirm that judgment today. Lujan has the relief he sought and is entitled to against PCC—a declaration that PCC violated the FDCPA and the RFDCPA, with an award of reasonable attorney's fees and costs. That there may have been additional arguments in favor of summary judgment against PCC is immaterial.

## III

A postjudgment order awarding or denying attorney's fees is an appealable order where, as here, it relates to enforcement of the judgment. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 650-656.) We review the trial court's decision awarding or denying attorney's fees for an abuse of discretion. (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 82.) In applying this standard, we review the trial court's conclusions of law de novo, its findings of fact for substantial evidence, and its application of the law to these facts to ensure that its decision was neither arbitrary nor

13

capricious.  (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 882.)

## A.

PCC appeals certain portions of the award to Lujan of $140,550 in attorney's fees and costs.  Specifically, PCC argues it was an abuse of discretion for the trial court to have compensated Lujan for fees and costs spent on litigating the cross-complaint against Wireless, Shields, and Garen, including the costs of defending the cross-defendants' appeal when the trial court overruled their demurrer to Lujan's cross-complaint.  PCC also argues that it was an abuse of discretion for the trial court to have compensated Lujan for time his counsel spent reviewing a cross-complaint PCC filed against Chase, and time spent litigating a demurrer to PCC's answer to the cross-complaint.  Finally, PCC argues it was an abuse of discretion for the trial court to apply a multiplier of 1.5 to the lodestar amount.  Reviewing for an abuse of discretion, we reject all of these arguments.

In response to PCC's various attempts to whittle down the lodestar amount, we note that the trial court already reviewed counsel's time entries and reduced Lujan's original request.  We also observe that some of Lujan's litigation expenses are directly traceable to strategies that PCC and the other cross-defendants employed, such as their decision to file an unsuccessful demurrer and then appeal, again without success, when the trial court overruled it.  Even where Lujan did not succeed, such as on the demurrer he filed to PCC's answer to the cross-complaint, the work that went into that effort likely provided a foundation for his later success on the cross-complaint.  In litigation, "[t]he final ground of resolution may become clear only after a series of unsuccessful attacks. Compensation is ordinarily warranted even for those unsuccessful attacks, to the extent that those attacks led to a successful claim."  (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133 (*Akins*).)  Here, Lujan was successful in defending PCC's complaint and in prosecuting his cross-complaint against at least one of the cross-defendants.  Where Lujan has not succeeded—for example, in cross-complaining against Wireless—his arguments are not frivolous, and his claim was closely related to the claims

14

against PCC on which he did prevail. We see no abuse of discretion in the trial court's decision not to reduce the attorney's fees request for those narrow aspects of his case in which Lujan did not prevail. (See *Hogar Dulce Hogar v. Community Development Com. of City of Escondido* (2007) 157 Cal.App.4th 1358, 1369; *Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 273.)

As for the multiplier, the trial court made no mistake of law and did not abuse its discretion in awarding fees at 1.5 times the lodestar amount. The sole case that PCC cites on this subject in its opening brief, *Ketchum v. Moses* (2001) 24 Cal.4th 1122, proves why this is so. The case explains that one important purpose a multiplier serves is to compensate for the risk that counsel will receive no payment at all unless the case succeeds, and that this rationale for a premium applies even where a statute requires the trial court to award a successful litigant attorney's fees. (*Id.* at pp. 1136-1139 [defendant in a SLAPP action entitled to fees under Code Civ. Proc., § 425.16 and to multiplier for contingency risk].) In a debt collection case, the debtor often has no funds to pay his or her attorney so the lawyer is working on contingency, and the trial court reasonably found that without a multiplier there would be insufficient incentive for lawyers to take such cases.

On reply, PCC also cites *Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, a case that is easily distinguished in that plaintiff there recovered an "extraordinary" amount, including substantial punitive damages, so that the trial court saw no need to enhance her fee award. (*Id.* at p. 1176.) Here, by contrast, Lujan recovered nothing but his award of fees and costs. The trial judge already trimmed the size of the requested multiplier on the basis that this was not a particularly complicated case, and the resulting award was well within her sound discretion. (See *Akins*, *supra*, 79 Cal.App.4th at p. 1134.)

**B.**

Cross-defendants Wireless, Shields, and Garen appeal the trial court's order denying their request for attorney's fees. Although the three cross-defendants prevailed in the trial court on summary judgment, the judge denied their request for two reasons.

She found the cross-defendants were not entitled to fees under the FDCPA because they had not shown that Lujan brought the cross-complaint in bad faith, and they were not entitled to fees under section 1717 because Lujan's cross-complaint was not an action "on a contract." (§ 1717, subd. (a).) We agree.

The FDCPA allows an award of fees to a prevailing defendant only where a plaintiff's case is "brought in bad faith and for the purpose of harassment." (15 U.S.C. § 1692k(a)(3).) To recover under this standard, the cross-defendants must show that Lujan "knew that his claim was meritless" against them and pursued it to harass them. (*Gorman v. Wolpoff & Abramson, LLP* (N.D. Cal. 2006) 435 F.Supp.2d 1004, 1013.) Claims that are "minimally colorable" do not meet this standard. (*Guerrero v. RJM Acquisitions* (9th Cir. 2007) 499 F.3d 926, 940.) Lujan prevailed on his FDCPA claim against PCC, and he may yet prevail against the individual cross-defendants. Where he has not prevailed, his claims are at least colorable. Even Wireless, who is a prevailing cross-defendant, is not entitled to fees under the federal statute because Lujan's claims against Wireless were not frivolous, and there is no evidence that they were brought simply to harass.

The cross-defendants also seek fees based on section 1717 but here, too, their argument fails. Section 1717 provides: "In any action *on a contract*, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the *party prevailing on the contract* . . . shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a), italics added.) This statute has no bearing on the cross-defendants' fee request because it only applies in a breach of contract action. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 615.) Under settled law, section 1717 "applies only to actions that contain at least one contract claim." And where "an action asserts both contract and tort or other noncontract claims," section 1717 "applies *only to attorney fees incurred to litigate the contract claims*." (*Ibid*., italics added.) Here, the cross-defendants faced no contract claim, but only claims under the FDCPA and the RFDCPA. Accordingly, they have no right under section 1717 to an

16

award of attorney's fees. The cross-defendants miss this central teaching of *Santisas* because they mistakenly focus on *Santisas's* analysis of a preliminary issue—the scope of the language of the contract in that case—rather than the effect of section 1717 on a fee award that is otherwise proper under the contract. (*Santisas*, at pp. 608-609, 617.) It is true that the cardmember agreement is central to Lujan's theory on his FDCPA and RFDCPA claims. But it is also true "that this action is outside the ambit of section 1717 insofar as it asserts tort" or other non-contract claims. (*Santisas*, at p. 615.)

## DISPOSITION

Summary judgment in favor of Lujan against PCC, both on PCC's complaint and Lujan's cross-complaint, is affirmed. The award of attorney's fees and costs to Lujan is affirmed. Summary judgment in favor of Wireless on the cross-complaint and denial of fees and costs to Wireless are both affirmed. As to Shields and Garen, summary judgment in their favor on the cross-complaint is reversed, the denial of fees and costs is affirmed, and the case is remanded for further proceedings consistent with this decision. PCC shall pay Lujan's costs on appeal, and the cross-defendants shall bear their own costs.

_____
Tucher, J.*

We concur:

_____
Richman, Acting P.J.

_____
Stewart, J.

*Professional Collection Consultants v. Lujan* (A147922, A148925)

18

     * Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Judge:                            Hon. Ernest H. Goldsmith

Trial Court:                            San Francisco County Superior Court

Attorneys for Appellant:            Law Offices of Clark Garen
                                       Clark Garen
                                        Rachel Zwernemann
                                        Brian C. Nelson

Attorneys for Respondent:         Law Office of Nathaniel Bigger
                                        Nathaniel Bigger

                                        Consumer Law Center, Inc.
                                        Fred W. Schwinn
                                        Bacon R. Roulston
                                        Matthew C. Salmonsen